†Holmes *versus* Porter *&* al.

Of the evidence to establish a partnership.

Where the relation of partners is proved, although limited to a particular business, a note made in the name of the firm by one of the partners is *prima facie* for the debt of the firm.

On Report from *Nisi Prius*, Howard, J., presiding.

Assumpsit, on a promissory note, dated Dec. 30, 1851, signed by E. L. Porter & Co. The plea was the general issue. The promisors in the note were alleged to be E. L. Porter & William B. Benson, who were both made defendants.

The defendants, in the name of E. L. Porter & Co., according to the testimony, contracted to finish certain sections of the Atlantic & St. Lawrence Railroad, in March, 1851, and several receipts executed in the name of said Company by each of the defendants, between that time and December following, were produced. Some receipts made by Porter,

signed E. L. Porter & Co., were made in January and March, 1852.

There was evidence that notes signed similar to the one in suit were discounted at one of the banks in Portland, one of them dated January 2, 1852, which had been paid.

Defendants proved the execution of a paper, signed and sealed by E. L. Porter, dated Nov. 25th, 1851, and the same was admitted as evidence, purporting on the part of Porter to assume all the liabilities of E. L. Porter & Co. as such contractors, and to hold Benson harmless from all the debts of that firm. The latter part of the paper was in these words:—

"It is also understood, that all business connections of every nature, kind and description, are this day settled and cancelled, and the firm is dissolved between the parties, and by their mutual consent. In witness whereof, I have hereunto set my hand and seal, this Nov. 25, 1851."

The cause was then taken from the jury by agreement, on report to the full Court, with authority to find the facts and render judgment according to law.

*Shepley & Dana*, for defendants.

*Gerry & Ware*, for plaintiff.

TENNEY, J.—This action is against the defendants as late co-partners in business, under the firm name of "E. L. Porter & Co.," upon a note of hand, dated Dec. 30, 1851, purporting to be signed by that firm. It is not admitted, that the defendants were at any time co-partners; but if the evidence should satisfy the Court, that they are to be treated as having been a co-partnership, they deny that the note given by one of them, was within the scope of the partnership business; and they further contend, that all connection between them of a partnership nature had ceased before the note was given. It is in proof, that the note was given by Porter in the name of the firm.

In actions against several partners on a contract, "the proof of the partnership usually consists in evidence, that

they have acted as partners in the particular business. Less evidence is usually sufficient in this case, than is requisite when partners sue as plaintiffs, for they are cognisant of all the means, by which the fact is capable of being proved; but when they are sued as defendants, the plaintiff may not be able to ascertain the real connection between the parties; it is sufficient for him to show, that they have acted as partners, and that, by their habit and course of dealing, conduct and declarations, they have induced those with whom they have dealt, to consider them as partners." 3 Stark. Ev. 1070. And Mr. Greenleaf, in his Treatise on Evidence, vol. 2, § 483, says, " If two persons have traded jointly in many instances, this will be admissible evidence towards the proof of general partnership, and sufficient, if the instances of joint dealing outweigh the instances of separate dealing, to throw upon the defendants the burden of proving that it was not such a partnership. And though the partnership was established by deed, yet, against the parties, it may be proved by oral evidence of partnership transactions."

Evidence was introduced, that the defendants were doing business together, as railroad contractors, under the firm and style of E. L. Porter & Co. It was shown that Benson, in March, 1851, signed a contract to do work on the Atlantic & St. L. Railroad, E. L. Porter & Co. A bid was introduced in evidence, by which it was proposed to do work on the same road, signed " E. L. Porter & Co.," by Benson; this was made in Dec. 1850. Several receipts were in evidence, signed in the same manner by Benson, between March 18, 1851, and May 29, 1851; also several other receipts purporting to be signed " E. L. Porter & Co," in the handwriting of Porter, between July 1, 1851, and March, 1852, were introduced by the plaintiffs. It was shown, that several notes were signed and indorsed by E. L. Porter & Co., and discounted at a bank in Portland; one dated Sept. 2, 1851, wherein Wood, Black & Co. were principals, payable to, and indorsed by " E. L. Porter &

Co.," another dated Jan. 2, 1852, signed "E. L. Porter & Co." The note in suit was discounted Jan. 7, 1852, and other notes were discounted at the bank, signed E. L. Porter & Co. Notes so signed and indorsed were paid. It does not appear which of the defendants made the notes that were in the bank, with the exception of the one in suit. A receipt was given by Porter, in the following words and figures:— "Portland, Dec. 5, 1851. Received of John A. Holmes his note for five hundred dollars, payable in sixty days, which I agree to pay, as it is for my benefit."
(Signed) "E. L. Porter & Co."

No explanation of these transactions of the defendants is attempted, and no proof adduced to show, that they were not at one time co-partners in the business of railroad contracts; and the evidence is satisfactory, that at the time of some of these transactions, they did hold to each other the relation of partners in business and adopted the firm name of E. L. Porter & Co.

It is contended, that the partnership being one of limited extent, the note in suit was not within its scope, and therefore Porter, who signed it, is alone responsible. "When the contract is made in the name of the firm, it will, *prima facie*, bind the firm, unless it is *ultra* the business of the firm. Where the firm imports on its face a company, as A. B. & Co., or A. B. & C., then the contracts made by the partners in that name bind the firm, unless they are known to be beyond the scope and business of the firm." *U. S. Bank* v. *Binney & al.* 176; *Livingston* v. *Roosevelt,* 4 John. 251. In *Etheridge* v. *Binney,* 9 Pick. 272, it was said by the Court to the jury, "if a purchase is made in the name of a firm, or money borrowed on a note given or indorsed in that name, this is *prima facie* evidence of a debt from the firm, and it can only be rebutted by proof in the defence that this was fraudulently done by the individual partner for his private use, and that it was known to the creditor." These instructions were sustained by the

whole Court as correct. This doctrine has been recognized in *Barrett* v. *Swann & al.* 17 Maine, 180, and may be regarded the settled law of this State.

The remaining ground of defence is, that at the time the note in suit was given by E. L. Porter in the name of the firm, the partnership had ceased to exist. It is not attempted to be shown, that any notice was given to the plaintiff or to the public of the dissolution of the firm, so early as the time when this note was given. What effect a dissolution before the date of the note, would have upon the right of the payee without such notice, we do not find it necessary to discuss. We are satisfied that the evidence relied upon to show a dissolution prior to Dec. 30, 1851, the date of the note in suit, is insufficient for that purpose. The instrument introduced to show that the defendants were no longer copartners, is dated Nov. 25, 1851, and executed by Porter alone; attached to it is a receipt signed by him, to the other defendant, of $1000 in full of all demands to the date, purporting to have been given at the same time. These papers are shown to have been executed on Nov. 25, 1851, in no other way than by their dates, though the subscribing witness testified to the signing of them. It often happens, that written documents bear a date anterior to the day on which they became effectual. But assuming that these papers were as they now appear on November 25, 1851, the evidence that they were delivered to Benson at that time, or any other time afterwards, is entirely wanting. Both the parties to those instruments, as they appear upon their face, are before us as defendants, denying their liability on the note in suit. The production of these papers by Benson even, would not authorize the presumption that they had become a binding agreement between the defendants, as they would, if the parties thereto held an adversary relation to each other in this action. But it does not appear, that they came from the hands of Benson, or that they were in any manner made known to him before the date of the note. Without some proof more than is here exhibited, it would

be establishing a dangerous precedent to give them full effect, as sufficient evidence of a contract executed between the parties to the copartnership. But the positive acts of one of the defendants, and the silence of the other in relation to these acts, which if known to him would be acquiescence therein, are wholly inconsistent with the dissolution of the partnership. We find that Porter was using the firm name, after Nov. 25, 1851, as he had done before, in several and various transactions. He gave company receipts for money months afterwards. Notes passed through the bank with the name of the firm upon them, which were discounted and paid after the time when it is insisted the firm had no existence. No evidence is produced that Benson, if he did not himself use the name of the firm upon contracts, ever denied his liability upon such contracts, excepting the one in suit, made by the other defendant. He may not have known that the name of the partnership was used by Porter, yet as it was so used, it is evidence that the latter did not treat the partnership as terminated; and the want of evidence that the other partner made objection, is at least a circumstance that he was in reality no party to the instrument bearing date Nov. 25, 1851.

*Defendants defaulted.*