# Drennen & Patterson *versus* House & Co.

*What constitutes a Valid Partnership as to third Parties.—Partnership,
how proved.*

1. If two persons, not partners in point of fact as between themselves, by
their acts and declarations hold themselves out to the public as partners in
such a manner as to induce the business men of the community to believe
them partners, and to trust them accordingly, they will be held liable as part-
ners to such creditors.

2. Where two persons, as intended partners, purchase a stock of goods, and
agree to give their notes therefor, and on receiving the goods at the time fixed,
one of them, the other being absent, signs and delivers the notes in their joint
names, the notes thus given are firm notes, and the agreement and its con-
summation, present a strong *primâ facie* case of partnership in an action
against them, on a contract made by one of them with another party in the
name of the firm.

ERROR to the District Court of *Allegheny county.*

This was an action of *assumpsit,* brought to March Term 1858,
by John J. House and Edward House, doing business as John J.
House & Co., against Samuel C. Drennen and Francis Patterson,
doing business as Drennen & Patterson.

[Drennen & Patterson *v.* House & Co.]

The plaintiffs declared on a note dated October 22d 1857, by Drennen & Patterson, with the common money counts; to which the defendants pleaded *non assumpsit*, payment, &c., and that " the defendants are not and never were partners."

On the trial, the plaintiff proved that on the 24th of July 1856, the defendants agreed with John Walker, Jr., to purchase his stock of goods, on the 1st of October following, and lease his storehouse for three years and a half, and not engage in the same business for one year; that about the 1st of October 1856, an account of stock was taken, the goods and storehouse delivered, and notes given to Walker, for the price of the goods, by Drennen, who signed them Drennen & Patterson, saying that as Francis was not present, he would sign for him; that a sign bearing the name of Drennen & Patterson was put up during that month, and that Francis Patterson was seen there occasionally, Drennen being the active business man about the establishment. He also proved that, in a conversation with Charles F. Diehl, in November or December 1856, Francis Patterson said that he was in partnership with Drennen; that he had furnished about $2000 to commence business, and assist Drennen, who was his brother-in-law, and that in consequence of what Francis Patterson had said at this time, he (the witness) had recommended the firm of Drennen & Patterson to John J. House & Co. That Francis Patterson and Drennen had said to another witness (G. H. Torrer), in July 1856, that they were going to establish a store that they had purchased of Walker, and that Patterson had said to the same witness that he had advanced to Drennen $2000 to purchase goods in Philadelphia, and instructed him not to go more than $1000 in debt, and that he had been seen frequently behind the counter in the store of Drennen & Patterson, looking over the books.

In the course of the trial, the court below, under exception, admitted in evidence the declarations of Drennen, made in the absence of Francis Patterson, that Francis was his partner, and also that the common report in the neighbourhood was that Drennen and Francis Patterson were partners.

To meet this case, the defendants offered in evidence an agreement between Francis Patterson, William E. Patterson, and Samuel C. Drennen, dated September 16th 1856, by which William E. Patterson agreed to take the place of Francis in the agreement with Walker; and also articles of copartnership between Drennen and William E. Patterson, for the purpose of carrying on the business of merchandising in the house occupied by Walker. Both these agreements alluded to the previous contract between Drennen and Francis Patterson and Walker.

To rebut the evidence of common report, the defendant offered to prove that Francis Patterson had said, repeatedly and

[Drennen & Patterson *v.* House & Co.]

publicly, both before and after the purchase of the goods, that William E. Patterson, and not himself, was the partner, and that he uniformly denied the report of his connection with the firm, whenever it was mentioned; but the court below rejected the evidence, and sealed a bill of exceptions.

The defendants' counsel requested the court to instruct the jury,

1. That the joint agreement of Francis Patterson and Samuel C. Drennen, to purchase the stock of goods and to lease the storeroom of John Walker, Jr., as set forth in the article dated July 24th 1856, and offered in evidence by the plaintiffs, did not constitute them partners in law.

2. That if the jury believe that Samuel C. Drennen and William E. Patterson entered into partnership on the 16th day of September 1856, as set forth in their agreement of that date, commenced business under the name of Drennen & Patterson, on October 1st 1856, and continued the sole members of that firm until after the date of the note in suit, then the plaintiffs cannot recover under the pleadings in this case, against Francis Patterson, even if he did represent himself a partner.

3. That even if the jury should believe that Francis Patterson did declare to C. F. Diehl that he was a partner, as testified by him, it was not such open, public, and general representation of partnership as would render him liable to other persons, if he was not actually a partner.

The court (HAMPTON, J.) answered these points as follows:—

"We cannot charge the jury as requested in the defendants' first point, because the agreement, when taken as a whole, shows the purchase by the defendants of a stock of store goods from John Walker, together with a lease of the storehouse, warehouse, grounds, &c., where Walker had been and was then carrying on a store, and where he was to continue to carry on his store from the date of the article, viz., 24th July, till the 1st of October 1856, when an inventory was to be taken of all the goods then on hand, and notes to be given therefor in a sum not exceeding in amount $2500.

"Walker also binds himself not to engage in merchandising in the borough of Elizabeth for the period of one year. This is a very important clause in giving a construction to the agreement: If the defendants were not entering into partnership in the business of merchandising, why lease the storehouse, warehouse, &c., for three years, and, especially, why should they bind Walker not to engage in the same business, in the same place, for one year? Taking the whole agreement, therefore, and construing it in the light of common sense and the usual mode of doing business among men, we are bound to say that the fair and plain inference is, that the parties, at the time they

entered into this agreement, did intend to go into partnership in the business of merchandising.

"But it is not fair to put the whole case on one particular piece of testimony, when there are other portions of the evidence bearing on the same question. I refer to the subsequent acts and declarations of the parties—all which must be taken into consideration by the jury in determining the question of partnership.

"2. We cannot instruct the jury in the language of this point, if by it the defendants' counsel mean to contend that if there were a secret agreement between W. E. Patterson and S. C. Drennen, by which they were in fact the members of the firm, notwithstanding there might have been "*a holding out to the public*" by Francis Patterson and Drennen, that they were the partners in the firm of Drennen & Patterson.

"This point brings up the main question in the case. To enable the plaintiffs to recover they must show one of two things: either, 1st, that Drennen and Francis Patterson were the partners comprising the firm of Drennen & Patterson, or, 2d, that they held themselves out to the public as such partners, and that by their acts and declarations, they induced the public to believe they were partners, and thereby gained credit on that ground.

"First. If the defendants were partners at the time this debt was contracted, the plaintiffs will be entitled to recover.

"Second. If they were not partners in point of fact as between themselves, and even if W. E. Patterson was the partner, and not Francis, yet, if Francis Patterson and S. C. Drennen, by their acts and declarations, held themselves out to the public as partners, in such a manner as to induce the business men of the community to believe them partners, and trust them on the faith of such representations, the plaintiffs will be entitled to your verdict. But, on the other hand, if there was no partnership in point of fact between these defendants, and if they never held themselves out by their acts and declarations to the public as partners, then the plaintiffs will not be entitled to recover.

"3. The law is correctly stated in this point, if the testimony of Diehl were the only evidence on that subject. But in determining whether the defendants did or did not hold themselves out as partners, and thereby induce the public to trust them, the jury will take into consideration all the other evidence bearing on this question, in connection with the testimony of Diehl.

["The deed and articles of agreement given in evidence by the defendants, are relied on to show that the firm consisted of Drennen and W. E. Patterson, and that Francis Patterson was not a member of the firm when this debt was contracted. Now if these papers bore date a year later, they would seem to correspond with the general facts of the case as disclosed by the

5 Wr.—3

[Drennen & Patterson v. House & Co.]

other evidence, and more particularly with the testimony of Diehl. By supposing that there might have been a mistake in their date, the apparent conflict in the evidence would be reconciled.] But, as we have already instructed you, admitting these papers to be correctly dated, and that Francis was not a partner at the time, and that William and Drennen were the partners composing the firm; still if Francis so held himself out to the public generally, by his acts and declarations, as to warrant the belief that he was a partner; and if, in consequence of such holding out, the plaintiffs in this case trusted the supposed firm of Drennen & Patterson on the ground that Francis was a partner, it is wholly immaterial whether the papers bear the true date or not.

" On this subject, in addition to the other evidence in the case, Charles F. Diehl testifies that in the latter part of November, or 1st of December 1856, Francis told him that he was a member of the firm of Drennen & Patterson; and he further says, that he recommended the firm of Drennen & Patterson to the plaintiffs in consequence of what Francis Patterson had said to him.

" This account commenced, it would seem by the books, on the 8th of October 1856, and continued up to 22d October 1857, when the note now in suit was given for the balance due on the account.

" You will take all the evidence on both sides into your careful consideration, and applying the law as we have laid it down to the facts as you find them, render a verdict accordingly."

Under these instructions, there was a verdict and judgment in favour of the plaintiffs, whereupon the defendants sued out this writ, and assigned the following matters for error:—

1. The court erred in permitting the plaintiffs to prove the declaration of S. C. Drennen, made to witness not in presence of Francis Patterson, that the firm of Drennen & Patterson was composed of himself and Francis Patterson.

2. In overruling the objections made by defendants' counsel to plaintiffs' offer to prove the general reputation of partnership, and admitting the testimony as corroborative evidence.

3. In excluding the article of agreement between S. C. Drennen and William Ewing Patterson, partners as Drennen & Patterson, and John Walker, Jr., for the sale of part of the stock of goods in their store, dated February 26th 1858, offered for the purpose of showing that the firm of Drennen & Patterson was known to be composed of S. C. Drennen and William Ewing Patterson, and dealt with third parties as such.

4. In overruling the defendants' offer to prove, by numerous witnesses, that when Francis Patterson was asked in reference to the firm of Drennen & Patterson, he stated to them that Wil-

liam Ewing Patterson, and not himself, was the member of the firm, and that these declarations were made repeatedly and publicly, before any dealing took place with plaintiffs—offered for the purpose of rebutting the evidence of general reputation, and to show that if such reputation did exist, it was not based on his declarations, but was expressly contradicted whenever it came to his knowledge.

5. In refusing to instruct the jury as requested in the first point submitted by defendants' counsel.

6. In answering the second point submitted, in the following manner : " We cannot instruct the jury in the language of this point, if by it the defendants' counsel mean to contend that if there were a secret agreement between W. E. Patterson and S. C. Drennen, by which they were in fact the members of the firm, notwithstanding there might have been a holding out to the public by Drennen and Francis Patterson, that they were the partners in the firm of Drennen & Patterson."

7. In not answering defendants' third point in the affirmative, without the qualification contained in the words, "*if the testimony of Diehl were the only evidence on that point.*"

8. The court erred in that part of the general charge which refers to the deed and articles of agreement offered in evidence by defendants, printed above in brackets. Thus leaving the jury to find that these papers were not executed at the time they purport to be, without any pretence of evidence tendered to impeach them.

*Penney* and *Sterrett*, for plaintiffs in error.

*C. Hasbrouck*, for plaintiffs in error.

The opinion of the court was delivered by

READ, J.—On the 24th of July 1856, John Walker, Jr., merchant, of the borough of Elizabeth, in the county of Allegheny, entered into articles of agreement with Francis Patterson, of Elizabeth township, in the same county, and Samuel C. Drennen, late of the state of Ohio, composing the party of the second part, by which said Walker sold to the said Patterson & Drennen all his stock of goods then in his storehouse, warehouse, and the cellar under the same, where he was then doing business on the corner of Market and Second streets, in said borough. Walker was to continue his business till the 1st of October, by which time he will have reduced his stock so as not to exceed $2500, at the rate to be paid for the same as thereafter mentioned. The stock on hand on 1st of October to be ascertained and inventoried, and transferred into the possession of the said party of the second part, with the storehouse, warehouse,

and ground attached; no country produce was included in the sale.

The stock on hand, within the limit of $2500, was to be valued at their first cost, exclusive of carriage or boxes not taken into the stock; and the said parties of the second part agreed to pay the said Walker the amount of such valuation, by giving their negotiable notes to him, payable in sixty days, four, six, eight, ten, and twelve months respectively, each note being for one-sixth part of said amount, with interest from the 1st of October, on which day they were to bear date. The storehouse furniture, per memorandums annexed, to be included in the stock at the prices agreed on.

Walker further agreed to demise to the said parties of the second part, the said storehouse, warehouse, and lot, for three years and six months, possession to be given on the 1st of October, at the yearly rent of $200, which the said parties of the second part covenanted and agreed to pay, in quarterly payments, to the said party of the first part, his heirs or assigns. The parties of the second part were to have the option of taking the premises as purchasers in fee simple, at $2400, payable in four payments of $600 each, as therein stated.

If Walker had a *bonâ fide* offer, he was at liberty to accept, after offering it to them. If not sold to another party, the premises, at the end of the term, were to be surrendered to the lessor in as good condition, natural wear and decay excepted, if a new roof was required, Walker to be at the expense, and he was to transfer, on the said 1st of October, the policy of insurance covering the stock of goods to the parties of the second part, they paying such proportional part of the premium for the time run after the said 1st of October.

He also covenanted with the parties of the second part, that he would not engage in the business of retailing goods, in the said borough of Elizabeth, within one year from and after the said 1st day of October.

On the trial of the cause, before proving the agreement, John Walker, Jr., testified that a few days after the 1st of October 1856, an account of stock was taken, and the goods and storehouse delivered, and notes given to him for the price of the goods. The notes were signed by Drennen in the name of Drennen & Patterson. The business was then conducted in the name of Drennen & Patterson until March 1858; a sign, " Drennen & Patterson," was put up in October 1856; saw Francis Patterson there occasionally.

At the time the notes were signed, Drennen said that Francis was not there, but that he would sign for him.

The notes thus given were firm notes, and were clearly the notes of Samuel C. Drennen and Francis Patterson, and were

[Drennen & Patterson v. House & Co.]

received as such by Walker, agreeably to the terms of the agreement. These were the only notes he contracted to take, and for which he delivered the possession of the goods; any other construction would make Francis Patterson guilty of a shameful fraud, effected through the agency of his brother-in-law Drennen.

The agreement, therefore, and its consummation, proved a partnership between the two defendants.

Charles F. Diehl testified that on the 20th of September 1856, Drennen & Patterson purchased from his house, to the amount of $1600, at six months' credit. In the latter part of November or beginning of December 1856, Francis Patterson, in reply to a question, told him he was a partner with Drennen, and requested him to go to the store and examine the books (in order to aid them by his experience, as he had formerly kept store at Elizabeth).

Francis told him that he had furnished funds, to the amount of about $2000, to commence the business, his object being to assist Drennen, as he was his brother-in-law, and witness recommended Drennen & Patterson to plaintiff, in consequence of what Francis Patterson had said to him.

Another witness, Tower, proved that in July 1856, Francis Patterson and Samuel Drennen both told him they were going to establish a store, and in September they told him they had purchased of John Walker, Jr., and Francis Patterson told him he had given Drennen $2000, to go to Philadelphia, and had instructed him not to go more than $1000 in debt. In June 1857, Francis took him into the warehouse, and asked him if he thought he could save a claim they had against Samuel Walker, Jr., by purchasing some goods from him. Other testimony was given which it is not necessary to state. The plaintiffs' claim was a book account, commencing October 8th 1856, and running to October 1857, and was closed by a note of Drennen & Patterson for $517.53, on which this suit was brought.

On the part of the defendants two agreements, both dated the 16th of September 1856, were given in evidence—the first between Francis Patterson and his brother William E. Patterson, substituting the latter in the place of the former, in the article of the 24th of July 1856, and the other an agreement for a partnership between the said Drennen and William Ewing Patterson. Neither of these were made public, and certainly were entirely unknown to Mr. Walker, when he took the notes of Drennen & Patterson. It is certainly a little singular, that the last agreement says, that by the agreement of 24th of July 1856, Francis Patterson and Drennen had made arrangements for going into the mercantile business in Elizabeth, and the counsel for the defendant asks the court to negative that construction.

[Drennen & Patterson *v.* House & Co.]

The assignments of error relate first to the admission or rejection of testimony, which we will first dispose of.

1. There was no error in admitting evidence of the declaration of Drennen, that the firm was composed of himself and Francis Patterson. It was evidence against himself, and was so stated by the court. In the same manner, the declarations of Francis, that he was a partner with Drennen, were evidence against Francis, and the two sets of declarations showed that both agreed that they were partners.

The 2d error is not sustained—the record not showing that any such testimony was given, and of course the defendants suffered no injury—and this disposes of the 4th assignment of error, as the court could not be called on to admit testimony, to rebut what does not appear to have been given in evidence.

4. The court were right in rejecting the deed of the 24th of February 1858, which was long after the transaction in question had happened, and could have no retrospective effect upon it. The 5th, 6th, 7th, and 8th assignments of error relate to the charge of the court, and their answers to the defendants' points.

It seems clear from what we have already said, that the court could not affirm the naked proposition, that the agreement of 24th of July did not constitute the defendants partners in law, and that the court went as far as they could be required to go. It was a most important link in the chain to prove a partnership, and, connected with its consummation in October, made out a *strong primâ facie* case, at the least, of partnership. So, the answer to the second point is perfectly proper, or otherwise two persons might hold themselves out to the world as partners, say to every one that they are partners, and years afterwards, a secret article of partnership between the irresponsible partner, and another irresponsible person of the same surname, as the only responsible party, may be produced to relieve him, and defraud all the creditors of the firm, who have given credit to it solely on the faith of his name. The third point is correctly answered, and we do not perceive that any injustice was done by the remarks of the court, objected to in the 8th assignment of error, followed as they were by the statement basing the courts' instruction upon the assumption, that the papers were correctly dated.

The charge of the court was a liberal and fair one, and if we had the power, we would not disturb the verdict.

Judgment affirmed.