## COBB v. MARTIN *et al.*

No. 1569. Opinion Filed April 9, 1912.

(123 Pac. 422.)

1. PARTNERSHIP—Existence of Relation—Question of Fact. When the question whether a partnership exists is a matter of doubt, to be decided by inferences to be drawn from all the evidence, it is one of fact for the jury; and the court should not nonsuit or direct the jury to find a verdict for the plaintiff or defendant.

2. EVIDENCE—Presumptions—Continuance of Relation. Where it is shown that a partnership at one time existed, it will be presumed to continue, in the absence of testimony to the contrary.

3. PARTNERSHIP—Mutual Rights and Liabilities—Rights of Action. In the absence of a statute, one partner cannot maintain an action at law against another to recover an amount claimed by him by reason of partnership transactions until there has been a final settlement of the affairs of the concern by discharging its liabilities, collecting its assets, and definitely ascertaining the surplus, to a share of which he is entitled. Up to that time, a partner's only remedy is to apply to a court of equity for dissolution and accounting and ascertainment of such balance.

4. SAME—Existence of Relation—Admissibility of Evidence. Books, papers, accounts, and similar writings, are admissible to show a partnership between persons who are described or referred to therein as partners.

5. SAME—Mutual Rights and Liabilities—Entries in Books. As a general rule, entries in the books of a partnership, during its continuance, are evidence for and against the different members of the firm in a subsequent adjustment of their accounts between themselves.

6. SAME—Existence of Relation—Evidence—Admissions. Parties who have admitted that they are in partnership, either by express statements or by conduct, will be held to that admission.

7. SAME. A prima facie case of partnership is made out against persons associated in a particular business by evidence that they share in its profits, pursuant to an agreement between them, by evidence that they have described themselves as partners in any writing, or by evidence that they are the common proprietors of the business conducted for their mutual profit.

8. SAME—Presumption. A presumption of partnership arises from the use of a name such as is commonly employed when a partnership exists.

**9.** **SAME—Death of Partner—Settlement.** Though a partnership is dissolved by the death of a member, it continues, in a limited sense, for the purpose of collecting its claims, paying its debts, and adjusting its affairs, during which time an action at law cannot be brought by one partner against another, on account of partnership transactions, until after a settlement.

(Syllabus by Sharp, C.)

*Error from District Court, Craig County;*
*T. L. Brown, Judge.*

Action by Kate Martin and others, trustees of the estate of Edward Martin, deceased, against S. S. Cobb. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*W. H. Kornegay,* for plaintiff in error.

Opinion by SHARP, C. On the 30th day of May, 1904, the plaintiffs herein filed their complaint, on the law side of the docket, in the United States Court of the Northern District of the Indian Territory, at Vinita. The complaint at law, so filed, charged that said plaintiffs were trustees of the estate of Edward Martin, deceased, and his sole heirs at law, and that defendant was indebted to them on a certain note, payable to Edward Martin, executed at St. Louis, Mo., October 29, 1895, for the sum of $10,000, payable six months after date, with interest, and that there was a balance due thereon of $9,536.11, for which amount, with interest, they asked judgment. Thereafter, and on the 28th day of January, 1905, the defendant, Cobb, filed his answer, alleging that in the year 1893 the payee of the note, Edward Martin, and said defendant entered into a partnership, for the purpose of handling cattle in the Cherokee Nation, Ind. T.; that the defendant was a citizen and plaintiff a noncitizen of the Cherokee Nation; that the money used by them in the cattle business was obtained upon promissory notes, usually given by defendant to said Edward Martin, and by him indorsed, sometimes in his individual name and sometimes in the firm name of Cobb & Martin; that they were equal partners in said cattle business, and that the proceeds of the note sued on were used by the firm in buying cattle to run upon the

public domain of the Cherokee Nation, in violation of law; that, prior to year 1889, said Edward Martin and the said S. S. Cobb had been partners in the cattle business in the Cherokee Strip, but that that particular partnership had been closed about the year 1889; that, while engaged in the second partnership, they borrowed large amounts of money, their entire capital being derived from loans made to them in the manner above stated; that the note sued on was a note made in the progress of the cattle business, for the purpose of retiring an outstanding note, made by defendant to Edward Martin, and by him indorsed in his own name and in the firm name of Cobb & Martin; that the expenses of handling the cattle in the Cherokee Nation, Ind. T., were borne by defendant, and that the entire proceeds of the sale of the partnership cattle, with the proceeds of the note in question, and other notes, had been turned over to the said Edward Martin during his lifetime and, subsequent thereto, to his executors and trustees as fast as realized, and that the said Edward Martin and his executors and trustees in fact received the proceeds of the sale of the cattle, and that there was still outstanding as a firm liability the amount of money represented by the note in question, and the entire expense of handling the cattle which had been borne by defendant, and which sum exceeded the amount of the note sued on; that the partnership was terminated by the death of Edward Martin in the year 1897; and that the representatives of his estate and his heirs were not willing that an accounting be had of the partnership business; and that plaintiffs should not be permitted to maintain their action. Defendant, as a further defense, pleaded the statute of limitations.

The only testimony offered on the part of the plaintiffs below was the deposition of Joseph E. Martin, one of the plaintiffs, who testified that at the time of his father's death the note in question was in the State Bank of St. Louis, and that it was taken up by him out of the income of the property of the estate. He testified that he did not know that his father and Mr. Cobb were interested in the cattle business—in fact, knew

very little about the matter in any way; that he had been paid by Mr. Cobb about $30,000 after his father's death. Joseph Martin identified various documents, submitted to him on cross-examination, as being in his father's handwriting, among which was a statement of account, made in the year 1894, which was styled "Statement of account of Cobb & Martin"; a note, dated at St. Louis, April 26, 1895, for $10,000, and indorsed by Cobb & Martin and Ed Martin; a note, made at St. Louis, May 16, 1895, for $2,500, indorsed by Ed Martin and Cobb & Martin; a note, made at St. Louis, March 16, 1896, for $5,000, indorsed by S. S. Cobb and Ed Martin; a note, made at St. Louis, August 25, 1906, for $10,000, indorsed by S. S. Cobb and Ed Martin; a note, made at St. Louis, February 20, 1896, for $15,000, indorsed by S. S. Cobb and Ed Martin. The signatures of the five notes mentioned are torn off of the original exhibits, but all were made payable to the order of either Ed or Edward Martin, and indorsed as above stated.

There was also introduced, without objection, a deposit slip of the National Bank of Commerce of St. Louis, dated May 16, 1895, showing a deposit by the firm of Cobb & Martin on that date of $2,421.65. Various receipts, signed by Joseph E. Martin, secretary and treasurer of the estate organization, were admitted in evidence. The receipt of July 19, 1898, recited, "On account of proceeds of cattle." The receipt of December 13, 1898, contained the following memorandum: "104 steers, sold by Strahorn, Hutton & Evans, net $3,108.61. 52 steers, Chicago Live Stock Company, net $1,469.73." The receipt of July 14, 1899, recited, "For 103 cattle." The receipts of October 20 and 21, 1898, referred to proceeds of two sales of cattle; one for 234 head, the second for 52 head. A letter, written at St. Louis, Mo., December 24, 1897, addressed to plaintiff in error, was as follows: "Yours enclosing check for $1,500.00 duly received, for which please accept my thanks. I am glad to hear that the snow is beginning to thaw so that you can get water for the cattle. Wishing you a Merry Christmas, I remain, Your friend, Joseph E. Martin." A deposit slip of the Mississippi Valley

Trust Co., dated December 20, 1897, showed a deposit, made by the defendant to the trustees of Edward Martin and Joseph E. Martin, executor, amounting to $28,102.14.

The defendant, Cobb, testified that he knew Edward Martin in his lifetime, had met him at different places, and that Martin had visited him when they had a ranch on Cabin Creek; that after Mr. Martin's death in the fall of 1896 young Ed Martin, one of the trustees of the estate, and a lawyer named McGinn came to see him about the cattle, and that he tried to get a settle-ment out of them; that the business was in bad shape; and that defendant offered to turn the cattle over to them and lose his expenses, but was told that they could not accept his offer, but for defendant to keep the cattle and do the best he could with them; that none of the cattle were fit to ship to market that year, and were kept until the next year and fed and wintered; that the market was very bad, and that defendant did the best he could in shipping out and realizing from the business; that when he sold or shipped the cattle he turned the checks over to Mr. Martin; that he owned none of the cattle individually; that defendant knew nothing about how the various notes at St. Louis were taken up, as that matter was attended to by Mr. Martin; that when they went into business in the year 1893 they commenced doing business with the National Bank of Commerce, but afterwards changed to the State Bank of St. Louis; that defendant made no payment on the note, but sent to Mr. Martin the checks given him as returns on his cattle shipments.

Other testimony touching the partnership business was offered and excluded. When the testimony closed, both parties moved for a peremptory instruction. Defendant's motion was overruled, plaintiffs' sustained, and the court directed the jury to return a verdict in favor of the plaintiffs for the amount of the note, with interest. Thereupon the jury returned verdict for $15,273.95. Motion for new trial being filed, overruled, and exceptions saved, the case is brought here for review.

As already shown, the answer of the defendant charged that he and Edward Martin, during the latter's lifetime, were

partners in the cattle business, under the firm name of Cobb & Martin. If the testimony tended to establish these allegations, and the partnership business had not been wound up and its accounts finally settled, plaintiffs' action would not lie. The defendants in error have not been represented in this court; and we have no means of knowing upon what theory the trial court proceeded in directing a verdict for the defendants in error. We have set forth at some length the testimony introduced, tending to show the existence of the partnership as a matter of fact. The various notes, statements, deposit slips, and receipts were all introduced without objection. This testimony was competent to prove the relationship that at the time existed between Cobb and Martin. In such a case, the books, papers, accounts, and similar writings are admissible, for the purpose of showing a partnership between persons who are described or referred to therein as partners. The rule applies here with particular force, in view of the fact that it is not simply proof dealing with an alleged partnership, but the solemn admissions in the handwriting of one of the alleged partners, in which the partnership name is used. 30 Cyc. 411; Lindley on Partnership, sec. 89; Bates on Partnership, secs. 193, 1136; Elliott on Evidence, secs. 491, 492; *Blodgett v. Jackson,* 40 N. H. 21; *Zackary v. Phillips et al.,* 101 N. C. 571, 8. S. E. 359; *Cook et al. v. Frederick et al.,* 77 Ind. 406; *Drennen et al. v. House,* 41 Pa. 30.

The general rule is that entries made in the books of a partnership, during the continuance of the copartnership, are evidence for and against the different members of the firm in a subsequent adjustment of their accounts between themselves. *Chick et al. v. Robinson et al.,* 95 Fed. 619, 37 C. C. A. 205, 52 L. R. A. 842. The entries in the books of a partnership, to which all members have had free access, must at least be considered *prima facie* correct as between the partners and their estates. *Fairchild v. Fairchild,* 64 N. Y. 472; *Wilson's Adm'r v. Potter et al.,* 42 S. W. 836, 19 Ky. Law Rep. 988; *Routen et al. v. Bostwick,* 59 Ala. 360; *Myers v. Myers, Executrix,* 111 Iowa, 584, 82 N. W. 961; *Hicks v. Chadwell et al.,* 1 Tenn. Ch. 251; *Rosenbaum v. Howard*

*et al.,* 69 Minn. 41, 71 N. W. 823; *Frick v. Barbour,* 64 Pa. 120; *Gilchrist v. Brande,* 58 Wis. 184, 15 N. W. 817; *Bryce et al. v. Joynt,* 63 Cal. 375, 49 Am. Rep. 94; *Bush v. Kellogg Co.* (Ky.) 34 S. W. 1056; *Hale et al. v. Brennan, Ex'r,* 23 Cal. 512. As between partners, entries in the partnership books of account are admissible, upon the theory that they were open to the inspection of each, and that by failure to object they have acquiesced in them, and are estopped to deny them, as well as upon the ground that they are admissions against interest, when offered against such party. The testimony may be of great weight or of little importance, according to the circumstances of the particular case, but in any event would be competent evidence.

Parties who have admitted that they are in partnership, either by express statement or by conduct, will be held to that admission. A *prima facie* case of partnership is made out against persons associated in carrying on a particular business by evidence that they are sharing in its profits, pursuant to an agreement between them, by evidence that they have described themselves as partners, in any writing executed or authorized by them, or by evidence indicating that they are the common proprietors of a business conducted for their mutual profit. *Drennen et al. v. House,* 41 Pa. 30.

In *Crowell v. Western Reserve Bank,* 3 Ohio St. 406, the court said:

"This instrument [a mortgage deed in the firm name], with the accompanying evidence of its execution by Crowell, himself using the firm name, tended to prove, by the act and conduct of Crowell, both the existence of the partnership and the name in which the firm did business. We are unable to perceive any valid ground of objection to this item of evidence. If it were competent to prove the existence of the partnership and the name of the firm by the verbal admissions, or ordinary business transactions and conduct of the defendant, it would certainly be strange if the same could not be shown by the act of the defendant, Crowell, under the solemnity of his deed."

In *Holmes v. Porter,* 39 Me. 157, the court said:

"It was shown that several notes were signed and indorsed by E. L. Porter & Co., and discounted at a bank in Portland;

one, dated September 2, 1851, wherein Wood, Black & Co. were principals, payable to and indorsed by 'E. L. Porter & Co.,' another, dated January 2, 1852, signed 'E. L. Porter & Co.' The note in suit was discounted at the bank, signed 'E. L. Porter & Co.' Notes so signed and indorsed were paid. It does not appear which of the defendants made the notes that were in the bank, with the exception of the one in suit. A receipt was given by Porter in the following words and figures: 'Portland, Dec. 5, 1851. Received of John A. Holmes his note for five hundred dollars, payable in sixty days, which I agree to pay, as it is for my benefit. [Signed] E. L. Porter & Co.' No explanation of these transactions of the defendants is attempted, and no proof adduced to show that they were not at one time copartners in the business of railroad contracts; and the evidence is satisfactory that at the time of some of these transactions they did hold to each other the relation of partners in business, and adopted the firm name of E. L. Porter & Co."

It is a familiar rule that a partnership may be established solely from the conduct of the parties. *McKallip et al. v. Geese et al.,* 30 Okla. 33, 118 Pac. 588. In the absence of a written agreement, a person who alleges a partnership between himself and another is bound to establish its existence by clear proof, especially if the other party to the agreement is dead. 30 Cyc. 402, 403, 413, 414; Parsons on Partnership, sec. 78; *Strickler v. Gitchel,* 14 Okla. 523, 78 Pac. 94; *Martin Browne Co. v. Morris,* 1 Ind. T. 495, 41 S. W. 423. This rule, however, does not authorize a court, where there is testimony offered that fairly tends to establish the relationship alleged, to take the case from the jury and direct a verdict. Testimony, having been admitted for the purpose of showing that Edward Martin and S. S. Cobb were partners, being before the jury unchallenged, it was error necessitating a reversal for the trial court to direct a verdict. When the question whether a partnership exists is a matter of doubt, to be decided by inferences to be drawn from all the testimony, it is one of fact for the jury; and the court should not nonsuit or direct the jury to find a verdict for the plaintiff or defendant. *Seabury et al. v. Crowell,* 52 N. J. Law, 413, 21 Atl. 952, 11 L. R. A. 136; *Id.,* 51 N. J. Law, 103, 16 Atl. 54, 11 L. R. A. 136; *Chick v. Robinson, supra; Simmons v. Ingram,*

78 Mo. App. 603; *Moore v. Dickson*, 121 Wis. 591, 99 N. W. 322; *Strickler v. Gitchel*, 14 Okla. 523, 78 Pac. 94; *Cassidy et al. v. Saline County Bank*, 14 Okla. 532, 78 Pac. 324.

A presumption of partnership arises from the use of a name such as is commonly employed when a partnership exists. *Haug v. Haug, Adm'x*, 90 Ill. App. 604; *Charman v. Henshaw et al.*, 15 Gray (Mass.) 293. Where it is shown that a partnership at one time existed, it will be presumed to continue, in the absence of testimony to the contrary. Bates on Partnership, sec. 1159; Elliott on Evidence, sec. 109, and authorities cited; Law of Presumptive Evidence, Lawson, rule 30, p. 219.

If, then, the partnership existed, it was dissolved by the death of Edward Martin in the month of December, 1896. Story on Partnership, secs. 317, 319. While this is true, yet the partnership, in a qualified and limited sense, continues after its dissolution, for the purpose of collecting its claims, paying its debts, and adjusting its affairs, and during which time an action at law cannot be brought by one partner against another for money alleged to be due him on account of partnership transactions until after a settlement.

In *Bender v. Markle*, 37 Mo. App. 234, the court held that, notwithstanding there might be a settlement between the partners of matters theretofore existing, and a dissolution, the partnership still continues, in a qualified sense, for the purpose of paying and collecting the partnership claims and adjusting partnership affairs and partnership relations which exist or had their inception prior to the dissolution. Story on Partnership, sec. 325; *Haskell v. Vaughan*, 5 Sneed (Tenn.) 618; *Lang v. Oppenheim*, 96 Ind. 47; *Ross et al. v. Cornell*, 45 Cal. 133.

It is elementary that one partner cannot maintain an action at law against another to recover an amount claimed by him by reason of partnership transactions until there has been a final settlement of the affairs of the concern by discharging its liabilities, collecting its assets, definitely ascertaining the surplus, to a share of which he is entitled. Up to that time, a partner's only remedy is to apply to a court of equity for an accounting

and ascertainment of such balance. Bates on Partnership, 849, 852, et seq.; Story's Eq. Jur. sec. 683; Pomeroy's Eq. Jur. sec. 1421; Tiedeman on Eq. Jur. sec. 534. Nor is the rule changed by the manner in which the question is here presented. It is shown by the testimony that the defendant executed to Edward Martin, during his lifetime, a number of promissory notes in large sums, and that these notes were indorsed on several occasions by Cobb & Martin, which indorsement was in the handwriting of Edward Martin. Other notes, not thus indorsed, were indorsed both by Edward Martin and S. S. Cobb. The fact, therefore, that the estate of Edward Martin has brought this action, without reference to the former alleged existence of the partnership, does not prevent the defendant, Cobb, from setting up such partnership, and that the proceeds of the note sued on became the assets of the partnership, and that therefore the transaction was a partnership transaction. In *Houston v. Brown,* 23 Ark. 333, it was said by the Supreme Court of Arkansas:

"A recovery upon this writing was resisted, on the ground that the moneys mentioned were advanced by Brown upon a partnership enterprise in which he and the plaintiff were interested. And it seems to us that receipts are not such acknowledgments of money had and received by Brown as to make him liable to refund the money, without a settlement of the joint interests therein alluded to and implied."

It is not shown that any settlement of the partnership, if in fact one existed, was ever had; but, on the other hand, it appears that for several years after the death of Edward Martin, the surviving partner, Cobb, continued to pay to the estate large sums of money aggregating approximately $30,000, and for several years continued to manage and handle the cattle interests of the alleged partnership. This conclusion is strongly supported by the testimony of the visit to defendant's ranch of Joseph E. Martin, one of the trustees of the estate, and his attorney, and of the letter of December 24, 1897, as well as writings showing the account on which various credits were made as already shown. The fact that the partnership, if one existed, had been dissolved by the death of Edward Martin did not thereby au-

thorize the estate to sue, in an action at law, until after a settlement of the partnership affairs. If such settlement could not be had, then an action in equity for an accounting would be the only remedy that could properly be invoked.

Other assignments of error are presented in the brief of plaintiff in error; but, in view of the conclusions at which we have arrived, it will not be necessary to consider them. The issue of a partnership between defendant and the testator of the defendants in error was presented by the answer; and there was testimony which tended to support the allegations. In a case such as presented by the record, the question of the existence or non-existence of a partnership presented a question of fact that should have been passed upon by the jury.

It was therefore error to direct a verdict, for which the judgment of the trial court should be reversed, and the cause remanded.

By the Court: It is so ordered.