## MARTIN BROWNE CO. vs MORRIS.

Opinion delivered October 30, 1897.

*Deed of Assignment—Recitals—Effect as to Validity of Deed.*

The deed of assignment·in controversy cited that the assignors "have sold, conveyed and delivered " the stock of goods to the assignee. *Held*, That the word "deliver" does not necessarily imply the delivery of possession of the goods to the assignee and the deed of assignment is not for that reason void on its face under ₰ 305 Mansf. Dig. requiring an assignee to file his inventory and bond with the clerk of the court before taking possession of the assigned property.

*Trial by Court—Findings of Fact—Conclusiveness.*

The appellate court regards findings of a fact by the trial judge in the same light as the finding of a jury and will not disturb the finding of facts made by the trial court.

*Allegation of Partnership—Burden of Proof.*

Appellants alleged a partnership between assignors, one Mays and one Bridgeman who were named in the deed as preferred creditors. *Held*, That the burden of proof was on appellants to prove such alleged partnership.

*Finding of Fact by Court—When not Disturbed.*

In order to sustain an assignment of error on account of the finding of facts by the court and its rulings on the law applicable to such facts, it should appear that the finding was conclusively contrary to the evidence.

*Certain Provision of Arkansas Assignment Law Not in Force.*

The provision of the law of Arkansas approved March 31, 1897, providing that " an assignment for the benefit of creditors may be contested or attacked for fraud  *  *  * whether the assignees knew it or not " has never been put in force in the Indian Territory.

*6. Assignment—Creditors Successfully Attacking Fictitious Prefer[...] Claims Allowed Costs.*

> A creditor who attacks a deed of assignment, and succeeds[...] striking out fraudulent preferred claims, is entitled to[...] costs and reasonable attorney's fees out of any funds in[...] hands of the assignee.

Appeal from the United States Court for the South[...] District.

C. B. KILGORE, Judge.

Attachment by Martin Brown Company and oth[...] against Morris & Nunn. Lee Cruce, assignee of Morri[...] Nunn filed interplea claiming the attached goods. Judgm[...] sustaining assignment, except as to certain fictitious de[...] Judgment against plaintiff for costs of suit. Reversed a[...] taxation of costs, and mandate issued directing assigne[...] pay costs and a reasonable attorney's fee to plaintiffs.

This is an action brought in the United States c[...] sitting at Ardmore, Indian Territory, upon an open acc[...] for a bill of goods sold by the plaintiff the Martin-Br[...] Company to the defendants Morris & Nunn. An att[...] ment was sued out on the 28th day of September, 1892,[...] levied upon a stock of general merchandise in the tow[...] Ardmore, as the property of the defendants. The prop[...] was sold under an order of the court, and the proc[...] amounting to about $1,850, were held by the clerk of[...] court pending the litigation. Plaintiffs' action was p[...] cuted to a final judgment, and the attachment susta[...] subject, however, to the rights of Lee Cruce, who file[...] interplea in the case after the property was sold, but b[...] the final judgment, claiming the attached property [...] and by virtue of a deed of assignment executed to hi[...] the defendants Morris & Nunn on September 28, 1892[...]

y the attachment was sued out.    In his interplea, Lee
uce alleged that he owned the property under and by vir-
 of said deed of assignment; that the assignment was ex-
ited before the attachment was sued out; that he had ac-
oted and qualified as assignee, and attached a copy of the
ed of assignment to his interplea; that the attached prop-
y was of the value of $7,000, all of which he was entitled
recover in this action, and prayed that he be adjudged the
her of the property, and that he have judgment for the
session of the property, or the proceeds realized from
 sale of the same.

The court sustained the plaintiffs' demurrer to this in
plea in so far as it sought to recover possession of the
perty sold under the order of the court before the inter-
 was filed, or its value, but overruled the plaintiffs' de-
rer in so far as it questioned the validity of the deed
ssignment relied on, holding the deed valid on its face.
 plaintiffs thereupon filed a reply to the interplea of Lee
ce, in substance as follows:

"The plaintiff the Martin-Brown Company admits
, prior to the suing out of the attachment herein, the
Morris & Nunn had executed to the said Lee Cruce the
 of assignment described in said interplea; that while
deed of assignment was not dated, the same was in fact
uted and accepted by the said Lee Cruce on the 28th
of September, 1892, just prior to the suing out and levy-
f the writ of attachment herein; and that afterwards
t, on the 14th day of October, 1892, the said Lee Cruce
fied as such assignee by executing the bond and sub-
ing to the oath required by law; and that he was' pre-
d from making a full and complete inventory of the
erty conveyed in said assignment by reason of the fact
 immediately after the execution of said assignment,

said goods, wares, and merchandise were seized by t
marshal under the writ of attachment coming into his han
against the defendants Morris & Nunn.   Plaintiff furth
admits that the said interpleader Lee Cruce would be e
titled to recover in this action the proceeds arising from t
sale of the property attached in this action, to wit, the su
of $1,850, if said deed of assignment was valid on its face,
unless the same should be held fraudulent and void on pr
of the allegations hereinafter made.

"Plaintiff alleges that said deed of assignment v
executed by the said Morris & Nunn, with the fraudulent
tent to cheat, hinder, and delay their creditors; that ab
the month of May or June, 1892, the said Morris & Nu
came to Ardmore, and engaged in the retail mercantile b
ness; that they associated with them R. L. Bridgeman a
J. A. Mays, and thereupon entered into a fraudulent c
spiracy and partnership to purchase all the goods t
could on credit, without regard to their ability to pay
the same, and with the fraudulent intention of appropr
ing the proceeds thereof to their own use and benefit; t
in the execution of said fraudulent partnership and c
spiracy, the said Morris & Nunn and Bridgeman and M
prepared certain false and fraudulent statements of th
nancial condition and responsibility of the said Morri
Nunn, and sent the same to numerous wholesale houses
agencies, in order to build up a false and fictitious credi
the said Morris & Nunn; and that, in further executio
said fraudulent partnership and conspiracy, the said J
Mays borrowed the sum of $5,000 from the Bank of C
merce of Purcell, I. T., about the month of August, 1
and caused the same to be placed to the credit of said M
ris & Nunn in said bank, but so held that the same c
not be checked out of said bank by said Morris & Nun
order that the said Morris & Nunn and the said Bridg
might schedule the same as part of their assets, and

wholesale merchants to the same in order to procure credit; and that for like fraudulent purpose, and likewise in execution of said fraudulent conspiracy and partnership, R. L. Bridgeman caused to be deposited in the First National Bank of Ardmore, I. T., in the name of Morris & Nunn, the sum of $1,800, which was likewise so held that the same could not be checked out by the said Morris & Nunn, but in order that the same might be scheduled by them as a part of their assets, and the wholesale merchants to whom they would apply for credit might be referred to said deposit in passing on credit when applied to by said Morris & Nunn; and that; in further execution of said fraudulent conspiracy and partnership, the said Morris & Nunn and Bridgeman and Mays did refer numerous wholesale merchants to said deposits; in the effort to procure credit for the firm of Morris & Nunn, and, by reason of said deposits and the said false and fictitious statements sent out as aforesaid to the wholesale merchants and mercantile agencies of the country, did procure large credits, and did procure a large amount of goods, wares, and merchandise, amounting to about the sum of $10,000; that the said Morris & Nunn were young men, without capital or experience in the mercantile business, that permitted the said Mays and Bridgeman to use their name in carrying out the aforesaid fraudulent partnership and conspiracy; and that the execution of said deed of assignment was in furtherance of said fraudulent partnership and conspiracy and intention to appropriate the proceeds of said goods, wares and merchandise purchased as aforesaid to their own use and benefit; that the debts described in the said deed of assignment, and preferred therein in favor of A. Mays for the sum of $1,400, and in favor of R. L. Bridgeman for the sum of $2,475, were simulated, fictitious, and fraudulent, and were preferred in said deed of assignment in order that the said Morris & Nunn and Mays and Bridgeman might thereby appropriate enough of said goods,

wares, and merchandise to pay off and liquidate said indebtedness to their own use and benefit, and thereby swindle and defraud the parties from whom they purchased said goods wares, and merchandise, and the honest creditors of Morris & Nunn; that on the 28th day of September, 1892, the day on which said assignment was executed, said Morris & Nunn were arrested on the charge of murder alleged to have been committed on the morning of said day; and that the said Morris & Nunn and Mays and Bridgeman fearing that their fraudulent partnership and conspiracy, aforesaid, might be exposed, caused the said deed of assignment to be executed as aforesaid; that while plaintiffs do not allege that said Lee Cruce, at the time he accepted said deed of assignment actually participated in the fraudulent conspiracy aforesaid or that he actually knew that the debts preferred in said deed of assignment in favor of said Mays and Bridgeman were fictitious and fraudulent, yet they do allege that they believe that, at the time he accepted said deed of assignment he was aware of such suspicious facts and circumstances surrounding the execution of the same, and occurring at the time, as should have aroused his suspicions, and were calculated to arouse the suspicions of an ordinarily prudent person, and cause him to investigate and ascertain whether not said assignment was made in good faith and for an honest purpose; that, at the time said Lee Cruce accepted said deed of assignment, he was, and had for nearly a month before that time been, the attorney for said Morris & Nunn and J. A. Mays and R. L. Bridgeman, and was on confidential terms with each and all of them; that he was aware the fact that they had been arrested on a charge of murder alleged to have been committed on said day, and was aware of the fact that said deed of assignment was executed under great stress, and in great secrecy and haste, and was aware of the fact that said Morris & Nunn and the said Bridgeman had represented to the wholesale houses that the said M

ris and Nunn were in good financial condition, and worth from $10,000 to $15,000 net; and that he was aware of the fact that the said R. L. Bridgeman was clerking in said Morris & Nunn's establishment, and that said J. A. Mays was a bankrupt, together with a good many other suspicious facts and circumstances. And plaintiffs allege that had the said Lee Cruce, at the time he accepted said deed of assignment, exercised ordinary care and diligence, he could have ascertained the fraudulent purpose of the said Morris & Nunn in executing said deed of assignment; and that, had he heeded the suspicious circumstances known to him at the time he accepted said deed of assignment, and made such inquiries as a person of ordinary prudence would have done under the circumstances, he could have ascertained that said deed of assignment was not executed in good faith, but that its purpose was fraudulent, and that the debts preferred therein in favor of Mays and Bridgeman were fraudulent and fictitious; and that the said Lee Cruce ought to be held to a knowledge of such facts as he could have ascertained by the exercise of ordinary care or diligence at the time said deed of assignment was executed; and that, by reason of the foresaid facts, said deed of assignment was fraudulent and void. Plaintiffs further allege that a number of the creditors of the said Morris & Nunn, after the levy of the said order of attachment and the execution of said deeds of assignment, interpleaded herein, alleging that certain goods, wares, and merchandise particularly described in said interpleas had been procured by the said Morris & Nunn from them by means of false and fraudulent misrepresentations as to the financial conditions of said Morris & Nunn, as hereinbefore alleged, and executed bond as required by law, and withdrew said goods, wares, and merchandise from the levy of the order of attachment herein long prior to the time said Lee Cruce interpleaded in this action, and that each of the said interpleaders recovered a judgment in this action

for goods, wares, and merchandise so withdrawn and claimed
by him, which judgments are hereby referred to and made a
part of this reply; that after said goods, wares, and mer-
chandise were withdrawn, there remained, subject to the at-
tachment herein, goods, wares, and merchandise amounting
to the sum of $2,475.10.

"Now, plaintiff alleges that by reason of the fraud
perpetrated by said Morris & Nunn and the said Mays and
Bridgeman in the purchase of said goods, wares, and mer-
chandise, as aforesaid, the title to said goods, wares, and
merchandise was never in Morris & Nunn, and could not be
asssigned by them, and was thus not subject to the order of
attachment in this cause, except as to the goods, wares, and
merchandise claimed by Ballard-Webb-Burnett Hat Co.; and
that the goods, wares, and merchandise, amounting to $2,-
475, sold under the order of attachment herein, were the
only property contained in the said deed of assignment, the
title to which was in said Morris & Nunn and Mays and
Bridgeman, to be conveyed by said deed of assignment; that
said goods, wares, and merchandise were sold under the
order of the court for their full value, and the sum of $1,-
850 was realized therefrom. Now, plaintiff alleges that
owing to the fact that the debts preferred in said deed of as-
signment in favor of Mays and Bridgeman, amounting to the
sum of $6,375, were fraudulent and fictitious, the title to
the property conveyed in said deed of assignment did not
pass to the assignee, and was all at times subject to attach-
ment as the property of the grantors in said deed of as-
signment, Morris & Nunn; that according to the terms of
said deed of assignment, the prime object and purpose in
executing the same was to prefer said fictitious debts in
favor of said Mays and Bridgeman; and that, owing to the
diligence of the plaintiff herein and the other attaching
creditors of said Morris & Nunn, the fact that said debts
were false and fictitious has been proven and established

nd that thereby the plaintiffs herein and other attaching creditors of said Morris & Nunn have acquired a lien and a right to hold said property and its proceeds prior and superior to any rights acquired by said Lee Cruce under and by virtue of said deed of assignment; and that, as to the property intended by the said Morris & Nunn in executing said deed of assignment to be appropriated to the payment of said fictitious and fraudulent debts, the title thereto did not pass under said deed of assignment; and, as to such property, said deed of assignment is inoperative and void, and said property has at all times been subject to attachment as the property of said Morris & Nunn; that it appears from the terms of said deed of assignment that it was the purpose and intention of said Morris & Nunn to appropriate property of value amounting to the sum of $6,375 to the payment of said fraudulent and fictitious debts; and that, by the diligence and litigation instituted by the plaintiffs herein and other attaching creditors, such purpose has been defeated, and the property withdrawn from the payment of such fictitious and fraudulent debts, and its proceeds ought to be applied to the payment of plaintiffs' debt herein and the debts the other attaching creditors.

"Wherefore plaintiffs pray that said deed of assignment be adjudged fraudulent and void, and that the proceeds arising from the sale of the property attached in this action, be applied to the payment of the plaintiffs' debt, and the debts of the other attaching creditors, and plaintiffs further pray that in so far as the fund arising from the sale of said attached property now held by the court is subject to the orders of the court, that plaintiffs' attachment lien and the lien acquired by the other attaching creditors be held superior to any right or claim acquired under and by virtue of said deed of assignment, and that plaintiffs have all other relief to which they may be entitled."

The interpleader Lee Cruce filed a reply to the plea
ing of the plaintiffs, in which he does not specifically den
the fraud of Morris & Nunn in executing the deed, but do
deny that he knew of any such fraud or participated in i
He denies that he knew anything of the financial conditio
of Morris & Nunn at the time of the execution of the dee
denies that he knew anything about Mays and Bridgema
borrowing money for the firm; and denies that there we
other partners in the firm besides Morris & Nunn. Tl
following interplea in the action was also filed: "No
comes M. J. McKinney, Ft. Worth China Co., and Frar
Herman and Co., and, after having obtained leave of tl
court to interplead in this action, respectfully show to tl
court that, on the dates and times hereinafter mentioned, a
and each of them recovered separate judgments against tl
defendants, Morris & Nunn, for the sums of money herei
after mentioned in the cases pending on the docket of tl
court, numbered as hereinafter stated [statement omitted
said amounts being exclusive of interest; that in each
said cases the plaintiffs therein sued out an order of attac
ment, and caused the same to be levied on the property d
cribed in the return of the marshal in this cause, subje
however, to the levy in this cause; that each of said attac
ments was duly and legally sustained in the judgment of t
court entered in this cause, which are hereby referred
and made a part hereof; that, under and by virtue of sa
levy and judgment sustaining the same, each of the defer
ants acquired a lien on the property described in the ma
shal's return on the order of attachment in this case, and
the proceeds realized from the sale of said property n
held in the custody of this court; and that each of said lie
is superior to any right acquired by the interpleader L
Cruce, under and by virture of the deed of assignment, a
these interpleaders hereby adopt all the allegations in t
reply of the plaintiff Martin-Brown Co., to the interplea

d Lee Cruce, and hereby allege that all said allegations
true.    Wherefore these interpleders join in the prayer
he plaintiff in reply to the interpleader Lee Cruce, and
ecially pray that the liens acquired under and by virtue
he levy of their attachment and the judgment of the
rt in sustaining them be declared superior to any right
uired by Lee Cruce unde said deed of assignment; that
deed of assignment be declared null and void; and that
proceeds arising from the sale of said attached property
his case be applied to the satisfaction of the several
ments aforesaid; and that these interpleaders have all
er relief to which they may be entitled. "

The case was tried before the court, without a jury.
he trial it was admitted by all the parties that each of
several interpleaders referred to in the plaintiff's reply
e interplea of Lee Cruce recovered judgement in this
n for the goods claimed by them, as shown by the mar-
's return on the order of attachment.    The actual con-
ersy at the trial was over the proceeds of the attached
erty sold under order of the court.    Judgment was ren-
d in favor of Lee Cruce, interpleader, for the money in
ands of the clerk, sustaining the assignment, and for
against the plaintiff the Martin-Brown Company and
nterpleaders M. J. McKinney, the Ft. Worth China
pany, and Frank Herman & Co.    A motion for a new
was presented and overruled, and an appeal has been
prosecuted to this court on behalf of the plaintiff and
interpleaders,

*W. A. Ledbetter* and *S. T. Bledsoe* for appellants.

1.    The deed of assignment was void on its face.    It
d that the assignor had " sold, conveyed and deliv-
' a stock of merchandise to the assignee.    " Deliver "
s to transfer, to put into another's power, to pass from

one to another.   5. A. & E. Enc. of Law 521; Anderso
Law Dictionary, 535; Teideman on Sales, § 92.   Un
the recitals of the deed, the execution of the deed, and
delivery of possession of the property to the assignee w
simultaneous acts.   Rice vs Thrasher, 24 Fed. 460; Linc
vs Fields, 54 Ark. 571; Raleigh vs Griffen, 38 Ark.
Jaffery vs McGeehee, 170 U. S. 361.

2.   The court erred in holding that Mays & Bridg
were not partners with the defendants, Morris & Nu
The evidence showed that both Mays & Bridgman borro
money from different parties.   That the money was de
ited in the bank in the name of Morris & Nunn.   That a
wards Bridgman made various statements to wholesa
concerning the financial standing of Morris & Nunn;
they only owed five or six hundred dollars.   Under
evidence there is no doubt about Mays & Bridgman b
partners of Morris & Nunn.   They were all to partici
in the profits of the concern to divide their ill gotten g
and each is liable for the debts.   The fact that their e
prise was dishonest and that their object was to plunder
steal does not make them any the less partners.   1. Lir
on Partnership 18-23; Harris vs Sessler, 3. S. W. 316.
assignment by a partnership which prefers the indiv
debts of its members, is void.   The preference in suc
assignment to a dormant partner avoids the assignr
Claflin vs Hersch, 19 N. Y. W. D. 348; Whiting vs He
39 Hun. 325; Bump on Fraud. Conv. § § 369 and 209;
rill, on Assignments § § 169, 179.   Assignments
reserve any use or benefit for the assignor are void.   B
on Assignments, § § 318-319.

3.   The court erred in holding that the interpl
Lee Cruce, did not have any knowledge of the fraud c
fendants, Morris & Nunn at the time the deed of assigr
was executed, and in sustaining the deed of assignmer

e of want of such knowledge   The act of Arkansas of
ch 31, 1887, provided "Any assignment for the benefit
editors may be contested or attacked for fraud by any
itor, and proof of fraud on the part of the assignor
l be sufficient to invalidate the assignment whether the
nee knew it or not."   This provision of the laws of
nsas was adopted and put in force in the Indian Terri-
by the act of March 1st, 1889, providing "That the
lings and practice and forms of proceeding in civil
es, shall conform as near as may be to the practice
lings and form of proceedings existing at the time in
auses in the courts of record in the state of Arkansas."
eedings in civil causes mean the performance of an act
s wholly distinct from any consideration of an abstract
.   It is a prescribed mode of action for carrying into
a legal right.   It presupposes the existance of the
.   Rich vs Husson, 1st Duer (N. Y.) 620.   Fargo vs
er, 43 Hun. (N. Y.) 19.   The term "proceedings"
s all the steps or measures adopted in the prosecution
fense of an action.   Gordon vs State, 4 Kans.   The
edings of a suit embrace all matters that occur in its
ess judicially; proceedings on a trial, all that occurs
t part of the litigation.   Moorewood vs Hollister, 6.
320.

4.   The court erred in refusing to submit additional
sions of fact as requested by the plaintiff as to wheth-
not, at the time the deed of assignment was executed,
elivered to the assignee, Lee Cruce, he was aware of
acts and circumstances surrounding the execution of
ed of assignment as would have aroused the suspicions
rdinarily prudent man as to the fraudulent character of
signment, and whether or not by the exercise of ordi-
liligence, under the circumstances he should have dis-
d the fraud.   Hill vs Shragley, 51 Ark. 56;  Aaronson
tch, 24 Fed. 465; Peters vs Braines, 133 U. S. 670;

Bump on Fraud. Conv. § § 337, 184; Waite on Fraud. C § § 319, 376; Burrill on Assignments, § 307.

5.   The court erred in holding that the attachm sued out on behalf of plaintiff and the interpleaders M McKinney, Ft. Worth China Co., Frank Herman & should be dissolved in so far as it effected the proj sought to be recovered by the interpleader, Lee Cruce, awarded to him by the judgement of the court in this and in denying the claim of the plaintiff and said interp ers, M. J. McKinney, et al, to have the money in the h of the court applied to the satisfaction of their judg and attachment liens, and in refusing to consider the dence introduced on this subject.   Market National Ba Hoffman; 23 Fed. 13; Wallace vs Treakle, 27 Gratton, Tale vs Leggitt, 2 Leigh, 106; Smith vs Post, 3 Thomp Co., Sup. Ct. N. Y. 647; Price vs Shepherd, 9 Pick Green vs Moss, 4. Barb. Sup. Ct. (N. Y.) 344.

6.   The court erred in its conclusion of law and judgment rendered against the plaintiff and interple M. J. McKinney, Ft. Worth China Co., and Frank H & Co., in favor of Lee Cruce, interpleader, for the mo controversy held by the clerk, said judgment being co to law and the evidence.   Emerson vs Center, 118 U. Hempstead vs Johnson, 18 Ark. 140; Hunter vs Weim Ark. 77; Crawford vs O'Neal, 144 U. S. 598; Bank of Rock vs Frank, 37 S. W. 400; Bump on Fraud. Conv Ed) 377; Waite on Fraud. Conv. (2nd Ed) § 326; Jess Hulse, 21 N. Y. 93; Waples-Platter Grocer Co. vs 54 Fed. 73.

*C. L. Potter, W. B. Johnson, A. C. Cruce* and *Lee* for appellee.

1.   The use of the word " deliver " in the conv

se of the deed of assignment, did not render it void on
ice. By delivery is not always meant a change of pos-
on. Delivery does not necessarily mean a transfer of
possession since there are cases in which the property
is in the buyer's possession at the time of the sale, so
the delivery is effected merely by the seller's expres-
of assent to the transfer of title. Lake vs Morris, 30
. 201; Nicholas vs Patten, 18 Me. 231; Hobert vs Little-
13 R. I. 343; 5 A. & E. Enc. of Law 521, a; 21 Id. 532;
is vs Sherman, 106 Mass. 433. Where an assignment
ts of two or more constructions, that one will be given
which renders it effective. Coverdale vs Wilder, 17
181; Emigrant Bank vs Roche, 93 N. Y. 374; Bank of
e vs Dunn, 67 Ala. 381; Coffin vs Douglass, 61 Tex.
Bellamy vs Bellamy, 6 Fla. 62; Burrill on Assignments
Ed) pp. 480; Grover vs Waitman, 11 Wend. 187; Tiede-
n Sales, § 84.

2. This court will not disturb the finding of fact by a
court that Mays & Bridgman were not partners in the
f Morris & Nunn. The findings of the court is as
sive as the findings of a Jury when the case is tried
the court without the jury. Reid vs Hart 45 Ark. 52;
Carleton vs Welsh, 38 Ark. 44; Lehman vs Dickson,
S. 72; Lancaster vs Collins, 115 U. S. 222; Union etc.
ylor, 100 U. S. 37.

3. Fraud is never presumed, it must be always prov-
l in the absence of evidence showing that the assignee
owledge of the assignors fraud and had reasonable
ls for believing the assignment was fraudulent, he
t bound to make any inquiry as to the bona fides of
d. Burrill on Assignments, (5th Ed) § 340; Hill vs
y, 51 Ark. 56; Joseph Lalone vs United States, 164
55.

SPRINGER, C. J. (after stating the facts).   The
assignment of error involved the validity of the deed of
signment. The plaintiff below, the Martin-Brown Comp
and the interpleaders M. J. McKinney, the Ft. Worth Cl
Company, and Frank Herman & Co., filed a demurrer to
interplea of Lee Cruce, on the ground that the deed of
signment of Morris & Nunn, under which he claimed the
tached property, was void on its face.   The deed of ass
ment is as follows:   "Know all men by these presents,
we, J. G. Morris and E. O. Nunn, composing the firm
Morris & Nunn, of Ardmore, Indian Territory, for an
consideration of the sum of one dollar to us in hand pai
Lee Cruce, and the further consideration hereinafter
tioned, have this day sold, conveyed, and delivered unt
said Lee Cruce the following described property, to wit:
that certain stock of goods, wares, and merchandise,
fixtures situated in the storehouse and wareroom  now
pied by us as a place of business on the north side  of
street, in the town of Ardmore, I. T., consisting of
goods, groceries, hats, caps, boots, queensware, clot
hardware, woodenware, fixtures, etc.; also, six cases of
goods now in the Gulf, Colorado and Santa Fe Railroad
depot, at Ardmore, consigned to us.   This deed is give
trust for the following purpose:   I desire the said
Cruce to pay, of the proceeds of said property, a no
$600.00, due J. A. Mays 30 days after the 20th day of
gust, 1892; also a note of $800.00, due to said J. A. Ma
days after August 20th, 1892, next, to pay R. L. B
man a debt of $2,475; next, to pay what I owe Tom Su
Mrs. Mattie Dobbings, and ——— Webb; next to pay t
mainder that I owe to said J. A. Mays; next to pay
Ballard-Burnett Hat Co. what we owe  them; the rest
paid to our other creditors, according  to their claims.
said Lee Cruce is to be controlled in the management an
of said property by the assignment laws  now in force

ian Territory. O. E. Nunn. J. C. Morris." The trial rt overruled this demurrer, holding that the deed on face was valid.

Counsel for appellants cite section 305 of Mansfield's est of the Laws of Arkansas, put in force in the Indian ritory by act of congress, which provides "that in all es in which any person shall make an assignment of any perty, whether real, personal, mixed, or choses in action the payment of debts, before the assignee shall be en- d to the possession, sell or in any manner manage or rol any property so assigned, he shall be required to in the office of the clerk of the court exercising equity sdiction a full and complete inventory and description of property, and also make and execute a bond to the e of Arkansas in double the estimated value of the prop- assigned." This statute is, as counsel contend, manda- , and contains an explicit direction that the assignee not be entitled to sell, or in any manner manage or con- any property so assigned, until he shall have filed the tory and bond required. Counsel insist that a deed h permits the assignee to sell or in any manner control ssigned property before he files a bond and inventory avenes this statute, and is void, and the words in the which declare that the assignors "have sold, conveyed, lelivered" the stock of goods to the assignee render eed void on its face. Counsel for appellants contend by this provision in the deed of assignment the posses- of the stock of goods was transferred to the assignee oment the deed was executed, and before the filing of ventory and bond as required by the statute; that the f the filing of a bond and inventory is excluded by the terms of the instrument; and that the execution of the and the possession of the property by the assignee simultaneous acts. The words used were such as were red to pass the title from the assignors to the assignee.

The deed must have been executed before the assignee co[u]
file a bond and an inventory.   While the law  requires  t[h]
the bond and inventory should be filed before actual  poss[es]
sion should be taken, yet a deed passing  title  must  be
ecuted in the first instance.   The words in the  deed  "ha[s]
sold, conveyed, and delivered" do not necessarily imply t[hat]
the actual possession of the property was  delivered  to
assignee.   The word "delivered" is sometimes used to m[ean]
a transfer of title, and at other  times a  transfer  of  poss[es]
sion.   Tied. Sales, § 92; 1 Benj. Sales, p. 231 et seq.   A[nd]
where a word admits of  two constructions,  that  interp[re]
tation should be given to  it which  will  render  the  inst[ru]
ment legal and operative, rather than that which will ren[der]
it illegal and void.    Grover vs Wakeman,  11  Wend.
The overruling of  the demurrer to  the  interplea  of
Cruce did not prejudice the plaintiffs. It only left the qu[est]
ion of the transfer of actual possession of the  goods  to
determined as a matter of  fact  by  evidence.    If  plain[tiff]
could · prove  that  actual  possession  of  the  goods
taken by the assignee before filing  a  bond  and  invent[ory]
this would invalidate the deed of assignment.   If  it  sh[ould]
appear from the evidence that  actual  possession  was
taken by the assignee  prior  to filing  bond  and  invent[ory]
the rights of the·interpleader and of the preferred cred[itor]
would have been  prejudiced  by  sustaining  the  demu[rrer]
Hence the trial court, in overruling the demurrer, save[d]
rights of all  parties, and ' secured  a  determination  of
case upon its merits, rather than a technical miscarriag[e of]
justice.

The second assignment of error by counsel for a[ppel]
lants is to the effect that " the court  erred  in  holding
Mays and Bridgeman were not partners with the defen[dant]
Morris & Nunn."   The case at bar was tried by the co[urt]
jury having been waived.   At the request of  the  appell[ant]

trial court filed its conclusions of law and fact, which re as follows. "(1) That on the 28th day of September, 92, Morris & Nunn executed a deed of assignment to Lee uce for the benefit of their creditors. (2) That they pre-red J. A. Mays and R. L. Bridgman and other creditors said deed of assignment. (3) That J. A. Mays and R. L. idgeman were not partners in the mercantile concern of rris & Nunn. (4) That Morris & Nunn, in making the deed ssignment, undertook to prefer certain fraudulent claims avor of Mays and Bridgeman, and the said deed of as-ment was made to defraud their creditors. (5) That Cruce, assignee, did not participate in, or have any wledge of, the fraud of Morris & Nunn at the time of execution and delivery of the deed of assignment. (6) t Martin-Brown Company sued out writs of attachment inst Morris & Nunn, and caused the same to be levied n the property in the hands of the assignee, and he has pleaded herein, and claimed the property for the benefit he creditors of Morris & Nunn. Conclusions of law: (1) t the assignment is a valid assignment, and conveyed property to Lee Cruce in trust for the benefit of credi-of the defendants. (2) That the attachment is sustained ued out. (3) That the attachment sued out in this case t to be dissolved in so far as it affects property in the ls of the interpleader, and that the interpleader Lee e ought to recover herein."

It will thus be seen that the court found, as a matter ct, that Mays and Bridgeman were not partners in the antile concern of Morris & Nunn. In determining ers of fact, appellate courts regard the findings of fact e trial judge in the same light as the findings of a jury. trial court, a jury having been waived, was the judge of acts, and, with competent evidence on both sides, had ame right to determine them as is accorded to a jury.

Finding of fact by trial court—Con-clusiveness.

We could not disturb the finding without violation, not onl
of past precedents, but of sound general principles.   Bell ı
Welch, 38 Ark. 144.   ''The court who heard the evidenc
and who had an opportunity to test the credit to be given
the witnesses, who testified in the case, from their mann
when testifying, as well as .n what they said, is more cor
petent to decide correctly than we would likely be.''   Dic
erson vs Johnson, 24 Ark. 253; Lehnen vs Dickson, 148
S. 72, 13 Sup. Ct. 481; Lancaster vs Collins, 115 U. S. 222,
Sup. Ct. 33.   Counsel for appellants, in their reply bri
concede the proposition '' that the finding of a trial judge
a question of fact, where the evidence is conflicting, wou
have about the same weight as a verdict of a jury; but
this case,'' they contend, ''there is no conflict in the tes
mony by which the partnership is proven; it is all one wa
It is true, as contended by counsel, that the question as
whether a partnership existed was a mixed one of law a

**Allegation of partnership — Burden of proof.** fact; but the burden of proving the partnership alleged ı
on the appellants.   The trial court found, as a matter
fact, that there was not sufficient evidence to establish
alleged partnership.   Counsel for appellants, in their fi
brief, set forth a synopsis of the testimony upon wh
they rely to establish this fact.   The testimony of M
McKinney, among others, is given, and much stress is l
upon her statements.   But she states that ''the mercan
business was opened up in the name of Morris & Nunn,
Ardmore, but that Bridgman was the manager of the c
cern, aud bought all the goods.''   There appears to be
testimony in the record which tends to show that Brid
man's position was other than as stated, viz. ''manager
the concern.''   In fact, the testimony of the other witnes
fully corroborates Mrs. McKinney's statement that Brid
man was the manager of the firm of Morris & Nunn; that
was acting for the firm,. and not as a member of it.   M
McKinney further testified that Bridgeman and Morri

unn and J. A. Mays told her "that Mays was interested in the firm; that he had furnished money to buy goods with; and that he was to have half of the profits." This was merely hearsay, except as to what Mays said. None of those parties so testified in court. Neither persons mentioned as having made this statement were called as witnesses in the case. As before stated, the burden of proving the alleged partnership was on the appellants. If they chose to rest their case upon mere hearsay testimony, the court had the right, and it was its duty, to disregard such testimony. The fact that Mays may have made this statement as to himself could only be competent in so far as it was an admission by him against his interest. He was a preferred creditor in the deed of assignment to Lee Cruce, and it was to his interest to sustain the assignment. Hence it was competent to prove his admissions as to his interest in the partnership. But all the other facts established in the case show this interest in the case was not the interest of a partner. The trial court doubtless considered the testimony of Mrs. McKinney in view of the deep feeling which she must have had against Morris and Nunn, one of whom had killed her husband, and gave it such weight as under the circumstances it was entitled to have. It is true, as contended by counsel for appellants, that the question as to whether the partnership existed or not was a mixed one of law and fact; yet, in order to sustain an assignment of error on account of the finding of fact by the court on this point, and its ruling on the law applicable to such facts, it should appear that the evidence conclusively established facts which proved the alleged partnership. If the record disclosed such a state of acts, the finding that no partnership existed would be reversible error; but the record fails to disclose such facts as would in law constitute a partnership, such as appellants allege existed.

The third assignment of error was as follows: "Th
court erred in holding that the interpleader, Lee Cruc
did not have any knowledge of the fraud of defendant
Morris & Nunn at the time the deed of assignment wa
executed, and in sustaining the deed of assignment be
cause of the want of such knowledge." This assignment o
error embraces two propositions: First; that Lee Cruce, th
assignee, did not have any knowledge of the fraud of th
assignors at the time the deed was executed; second, that th
court erred in sustaining the deed because of the want (
such knowledge. The first proposition is one of fact, an
the finding of the trial court will not be reviewed by th
court, for the reasons already stated in this opinion. Th
second proposition is one of law, and will be carefully co
sidered. Counsel for appellants call attention to the fa
that the legislature of Arkansas, by an act approved Mar
31, 1887, provided that "any assignment for the benefit
creditors may be contested or attacked for fraud by a
creditor, and proof of fraud on the part of the assignor sha
be sufficient to invalidate the assignment whether the a
signee knew it or not"; and counsel contend that this act 1
lates to "the pleadings and practice and forms of proce
ings in civil actions," and it was therefore put in force in t
Indian Territory by the act of congress approved March
1889, which established the United States court in the
dian Territory. We do not agree with counsel as to t

<span style="float:left;font-size:smaller">Statute of<br>Arkansas of<br>March 31, 1897,<br>not in force.</span> contention. The act of the Arkansas legislature of Mar
31, 1887, does not relate to practice, pleadings, or forms
procedure. It is positive and affirmative legislation, a
changes an important rule of decision in Arkansas; but
has never been put in force in the Indian Territory.

Counsel for appellants do not contend that Lee Cru
the assignee, at the time he accepted the deed of assi
ment, actually participated in the fraudulent conspiracy

he assignors, or that he actually knew that the debts pre-
ferred in said deed of assignment in favor of Mays and
Bridgeman were fictitious and fraudulent; yet they allege
that, at the time he accepted the assignment, he was aware
of such suspicious facts and circumstances surrounding the
execution of the same, and occurring at the time, as should
have aroused his suspicions, and that such facts were well
calculated to arouse the suspicions of an ordinarily prudent
person, and cause him to investigate and ascertain whether
or not said assignment was made in good faith and for an
honest purpose.     Hence counsel submit their fourth as-
signment of error, which is as follows:   "The court erred in
refusing to submit additional conclusions of fact, as re-
quested by the plaintiff, as to whether or not, at the time
the deed of assignment was executed and delivered to the
assignee, Lee Cruce, he was aware of such facts and cir-
cumstances surrounding the execution of the deed of as-
signment as would have arroused the suspicions of an or-
dinarily prudent man as to the fraudulent character of the
assignment, and whether or not, by the exercise of ordin-
ary diligence, under the circumstances, he should have
discovered the fraud."     Counsel for appellants in their
brief, make the following statement:   "We do not claim
that Lee Cruce had positive knowledge of the fraud of the
assignors at the time he drew the assignment and accepted
the position of assignee, but we do insist that he had full
and adequate means of knowing of the fraud: that he had
positive knowledge of such suspicious facts and circum-
stances and badges of fraud as should have aroused his sus-
picions and quickened his senses to a discovery of the
fraud; that the atmosphere in which the assignment was
conceived and executed was so impregnated with crime and
fraud that the law will impute to him a knowledge of what
a man of ordinary sense and prudence, with his eyes open,
must have discovered.     What were the circumstances sur-

rounding the execution of the deed? What notice did Le
Cruce have of suspicious facts and circumstances at th
time?" As before stated, a jury was waived in this case
and it was tried by the court. The court was requested t
find specially upon the facts and the law, which was don
The facts proved on this point were as follows: "(4) Th
Morris & Nunn, in making the deed of assignment, unde
took to prefer certain fraudulent claims in favor of Ma
and Bridgeman, and the said deed of assignment was ma
to defraud their creditors. (5) That Lee Cruce, as assigne
did not participate in, nor have any knowledge of, the fra
of Morris & Nunn at the time of the execution and delive
of the deed of assignment." After the court had announc
these findings of fact, counsel for appellants requested t
further finding of fact indicated in their fourth assignme
of error, above quoted. Counsel for appellees insist th
the fifth finding of fact by the court, supra, "complete
disposes of the contention of the appellants." If Lee Cru
the assignee, did not have any knowledge of the fraud
the assignors at the time the assignment was made,
found by the trial court, this finding may have been rega
ed by the court as sufficiently responsive to the special
quest for a further finding of fact as to require no additio
or more specific finding. The facts were all before the co
and it weighed and passed upon all of the evidence in
case. This court will not review the findings of the co
on questions of fact unless it should clearly appear that
court making such findings was actuated by prejudice
passion. Counsel for appellants, in their first brief, giv
synopsis of such facts from the record as, in their opini
ought "to charge Lee Cruce with a knowledge of the fr
that surrounded him when he accepted the assignme
We have carefully examined this evidence, so set forth
appellants' brief, and presume it is stated as favorably
them as the facts will warrant. We will not recapitu

he facts. The most pertinent fact stated is to the effect that, on the day before the assignment, it appeared upon investigation that the firm of Morris & Nunn was solvent; but, in the deed of assignment the preferred claims of Mays and Bridgman were large enough to consume the entire assets. Lee Cruce testified that his impression was that the firm was in good circumstances. On the next day the facts disclosed in the deed show that the firm was insolvent. Is the fact that a mercantile firm, which was supposed to be solvent, is found upon investigation to be insolvent, such a circumstance as would have aroused the suspicions of an ordinarily prudent man as to the fraudulent character of the assignment? The mere fact of unforeseen insolvency is not, in our opinion, a fact which would arouse the suspicions of ordinarily prudent persons as to the integrity of the insolvents. After carefully examining the synopsis of the evidence on this point submitted by appellants in their brief, we are of the opinion that it does not show that Lee Cruce, at the time the deed of assignment was executed, had any knowledge of the fraud of Morris & Nunn, or any knowledge of facts or circumstances sufficient to arouse his suspicions as to the fraudulent character of the deed. Not being in possession of such knowledge at that time, it was not incumbent on him, before he could accept the trust imposed upon him by the deed, to institute an investigation to ascertain whether or not the assignment was made in good faith and for an honest purpose. Before he would be required to institute such an investigation, it must appear from the evidence that, at the time of the execution of assignment, he was in possession of some fact or circumstance which of itself suggested the fraud. The rule on the subject of constructive notice is thus clearly stated by the supreme court of the United States: " When a person has not actual notice, he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say, not only

*Facts necessary to arouse suspicions of assignee.*

*When assignee put on notice.*

that he might have acquired, but also that he ought to ha
acquired, it but for his gross negligence in the conduct
the business in question. The question, then, when it
sought to affect a purchaser with constructive notice, is n
whether he had the means of obtaining, and might, by pru
ent caution, have obtained, the knowledge in question, b
whether not obtaining, was an act of gross or culpable ne
ligence." Wilson vs Wall, 6 Wall. 91. The deed of assig
ment in the case at bar is merely a preference of credito
and, as such, it should not be rendered invalid as to bo
fide creditors by any design on the part of the assignors
cheat, hinder, or delay their other creditors, unless that
sign was known by the assignee, and participated in by hi
or that he was in possession, at the time of the assignme
of some fact or circumstance so clearly indicative of fra
as to have made it his duty to institute an investigation
ascertain the bona fides of the transaction.

The other assignments of error in this case are to
effect that the court erred in refusing to order the money
the hands of the court to be paid out in the satisfaction
the claims of the appellants. It appears from the evide
that, after the attachment was run, the interpleaders,
parties to this case, recovered, by writs of replevin,
property attached, which was claimed by them, and t
there remained thereafter goods invoiced at $2,450,
which sold for only $1,850, which is the amount now in
hands of the court. Appellants insist that the proceeds
this property were intended by Morris & Nunn to be appl
to the payment of the fictitious and fraudulent claims
Mays and Bridgeman; and that "the fraud of Morris
Nunn in preferring these fictitious debts was discovered
exposed solely by the diligence and at the expense of
plaintiff and the interpleaders M. J. McKinney, Ft. Wo
China Co., and Frank Herman & Co.; and that Lee Cr
did not suspect the fraudulent character of these debts u

e first trial of this case, many months after the deed of as-
gnment was executed." The case of Bank vs Hofheimer,
 Fed. 13, is cited by appellants to sustain the doctrine
at creditors who have successfully attacked the assign-
nt on the ground that it preferred fictitious debts should
 rewarded for their diligence by having appropriated to
e satisfaction of their claims the property, or its proceeds,
signed by the debtor to be appropriated to the payment
the fictitious debts. This contention is not without merit.
recognizes the fact that the diligent creditor is in a better
sition than one who is indifferent as to his right. In the
se at bar, the creditors, other than the appellants, have
he nothing except to file their claims with the assignee.
ey are not represented by counsel, and have incurred no
ense to the litigation. If this assignment should be sus-
ned in toto, none of the preferred creditors will receive a
t, except Mays and Bridgeman, whose claims have been
nd by the trial court to be fictitious and fraudulent.
t is sustained in part, so as to exclude their claims, all
t will be realized will go to the other preferred creditors.
 have done nothing to protect their interests, who are
nding aloof, and watching the contest, and who will ap-
r on the legal arena after the appellants have succeeded
exposing and defeating the fictitious and fraudulent
ms of Mays and Bridgman. Then they will step for-
d in the shoes of the assignee, and ask the court to tax
costs of the litigation to the appellants, and to award
proceeds in the hands of the court, which have been res-
 by the appellants from the grasp of fraudulent creditors,
he payment of their preferred claims under the deed of
gnment. If this be the law in such cases, the judgment
he trial court should at least be so modified as to tax the
s of litigation and a reasonable fee to be paid to the
rneys of appellants against the assignee, to be paid out
e proceeds in the hands of the court, before distribu-

tion of the funds is made to the preferred creditors, wh
claims are ascertained to be just.   It seems that the auth
ities are conflicting on this point.   Burrill, Assignm.
165, § 117, cites the decision on the subject, and concludes
follows:   ''The question whether provisions in the assi
ment for the payment of a fictitious debt will invalidate
entire assignment, or whether the instrument will be s
tained for the benefit of creditors who have not participa
in the fraud, has given rise to conflicting decisions.   It
be seen from the cases referred to in the notes that the  p
ponderance of authorities seem to be in favor of the opi
that the assignment will be held good as to all debts t
are bona fide; and this rule would undoubtedly prevail
those states where provisions is made by statute for test
the validity of claims presented to the assignee for paym
under the assignment.''   In the case of Hemstead vs J
ston, 18, Ark. 137, the supreme court of Arkansas held:
it be assumed that they [the debts] were simulated, the d
of trust would, nevertheless, be valid as to the other b
ficiaries, unless it had been shown that they were priv
the insertion of the simulated claims for fraudulent
poses.''   There is no contention in the case at bar that
preferred creditors, whose claims were just, were priv
the insertion in the deed of assignment of the fictitious
fraudulent claims of Mays and Bridgeman.   They
chargeable with nothing except want of diligence and
difference as to their own interests.   Accepting the
clusion reached in Burrill on Assignments, which seem
be sustained by the supreme court of Arkansas in the
of Hemstead vs Johnston, supra, whose decisions, if
binding, are at least very persuasive upon this court, w
of the opinion that the judgment of the court should be
firmed in so far as it sustains the assignment, and holds
the claims of Mays and Bridgeman are fictitious and fra
lent, but that it be reversed in so far as it taxes the

inst the appellants. The case is therefore remanded,
h directions to tax the costs and a reasonable fee for the
orneys of the appellants, to be fixed by the trial court,
inst the assignee, to be paid out of the funds in the
ids of the court, and to render judgment for assignee for
remainder of said funds.

CLAYTON and THOMAS, JJ., concur.    TOWNSEND, J.,
being present, did not participate.