MOORE, Respondent, vs. DICKSON and others, Appellants.

*March 26—April 19, 1904.*

*Partnership: Who are members: Signature of articles: Intent: Court and jury: Costs: Printed case on appeal.*

1. In an action to charge as partners persons whose signatures appeared in a book in which had been pasted the articles of copartnership of a Farmers' Union—some of the signatures being upon sheets inserted by pasting and some upon the pages of the book itself—the evidence (discussed in the opinion) is *held* sufficient as to the signatures on two of the pasted sheets, and also as to those in the book itself, to sustain a verdict to the effect that at all times when such signatures were being made the articles of partnership were annexed to such sheets or book, and that the signers intended to subscribe such articles.

2. As to another of such pasted sheets the evidence is *held* insufficient to show that the articles were annexed. thereto at the several times when the signatures on it were made, but sufficient as to some of the signers thereon, though insufficient as to others, to warrant the inference that they intended, at' the time of signing, to join the partnership.

3. As to one M., whose name appeared on a small slip pasted in the book, and who denied that he ever signed, the testimony of another defendant whose name was on the same slip, that both he and M. signed at the same time with the declared purpose of becoming parties to the agreement, is *held* sufficient, together with some evidence of the authenticity of M.'s signature, to take to the jury the question whether he signed for the purpose of joining the partnership.

4. A judgment against a number of partners was appealed from by a part of them and was reversed. Upon a second trial a new judgment was entered against all the defendants, and the costs allowed included those taxed and allowed in the former judgment. Some of the former appellants . again appealed. *Held*, that as to them, at least, the inclusion of such costs was not error.

5. The printed case herein having included, in violation of Supreme Court Rule VIII, considerable testimony relating exclusively to the liability of nonappealing defendants, and the judge's charge *in extenso*, to which no exception was taken, and there being a large part of it pertaining only to the liability of nonprevailing appellants, taxation of the expense of printing such case is limited to about one third thereof.

APPEAL from a judgment of the circuit court for Vernon county: J. J. FRUIT, Circuit Judge. *Reversed in part, affirmed in part.*

This is an appeal by forty of the defendants from judgment in favor of the plaintiff, rendered upon a second trial of the same action considered in *Moore v. May,* 117 Wis. 192, 94 N. W. 45, where the facts are quite fully stated. Upon the second trial the court, by unexcepted instructions, submitted to the jury the question whether the persons whose signatures appear either upon the sheets of paper or the pages of the book actually subscribed their names to the articles of copartnership knowing they were signing some kind of a contract or agreement at least; or, if they merely signed loose sheets of paper, whether they did so with the intention that they were signing some written contract whereby they bound themselves, understanding such loose sheets were to be attached to the contract; and the jury found a general verdict against all the present appellants. Such appellants, having on the trial moved for the direction of a verdict in their favor and afterwards moved to set aside the verdict and for a new trial, appeal from the judgment against them.

For the appellants there was a brief by *Smith & Griffin, C. W. Graves,* and *Silbaugh & Bennett,* and oral argument by *C. J. Smith* and *Mr. Graves.*

For the respondent there was a brief by *C. M. Butt, Jr.,* and *E. C. Higbee,* and oral argument by *Mr. Higbee.*

DODGE, J. 1. The only question raised on the merits is whether error was committed in refusing to direct a verdict in favor of the appealing defendants and in refusing to set aside that rendered in favor of the plaintiff. This depends, of course, on whether there was any credible evidence tending to establish, as to each of the appellants separately, that he affixed his signature with the understanding and intent to subscribe the articles of copartnership, which, it is claimed,

were mechanically attached either to the sheets of paper or to the book at the several times of signing. A typical contention, common to nearly all of the appellants, is that, upon attempting to purchase goods at the store of the Farmers' Union, they were informed that the rules required non-members to pay a fee of $1 each for the privilege of trading, and the manager requested them to write their names on a sheet of paper, not attached to any contract, for the mere purpose of preserving a list of those who had so acquired that privilege. In view of the very great number of persons and lapse of time between the transactions and the testimony, it is not surprising that there is much confusion and irreconcilable conflict in the evidence. The evidence varies as to the appellants almost with their number, and we have received very little assistance from the briefs, either by way of classifying such appellants or collecting the evidence relating to each of them. A careful examination of the record indicates certain lines of classification. It appears by the testimony of Mr. Butt, who was the counsel and presided over the organization of this so-called copartnership, that he drew up and had printed the form of copartnership articles which are now pasted in this book, and called a meeting of those interested; that, as a result of the conference there held, certain alterations were made, and also certain additions which extended beyond the limits of the printed paper, one line thereof being written upon the top line of the first page of a sheet of legal cap, and that thereupon, immediately following this line, on the same sheet, which was pinned to the foot of the printed form, those present commenced to sign. The number who then signed is left somewhat indefinite, but includes, at most, but two or three of the appellants. Clearly, as to them, Mr. Butt's evidence, if believed by the jury, would justify the conclusion that they affixed their signatures intending to subscribe the agreement. The contract, with the first sheet of legal cap pinned to it as above described, was

then taken to the store, and upon it appears a continuation of names down the first page, over the end and down the second page, then over the connecting fold down the third page and along the fourth page, all in due sequence. It is apparent that the first and second sheets pasted into the book are the two halves of a double sheet of legal cap originally joined at the end. Then there appears pasted in the book by its edge a third half sheet of legal cap, of a different manufacture, with signatures covering one side and about half of the other, finishing with the name of *Louis H. Glenn.* At this stage in the proceedings Mr. Butt again testifies that, some months after the first signing, the manager brought to him the original contract, with these three half sheets of legal cap pinned to it by a single pin, they not being one on the end of the other, but the three sheets together pinned to the foot of the contract. They were becoming dilapidated, and he took a book—the one in evidence—with pages larger than sheets of legal cap, pasted upon one page the contract, with the top line of the first sheet of paper constituting the last line of the contract, on the next page of the book the first half sheet of paper by its edge, so that both sides could be referred to, then the second and third half sheets of paper in the same way. These are designated, the contract as "Exhibit 1," the first half sheet of paper as "Exhibit 2," the second as "Exhibit 3," and the third as "Exhibit 4," in which way we shall refer to them hereafter. The papers disclose numerous pin marks at the end of each, where, according to Mr. Butt, they were fastened. The manager of the store, who took the several signatures, is dead, and his testimony could not be had. Mr. Butt testifies that he was in the store frequently, and looked at the contract, with its attached sheets of paper, in order to see how generally the farmers were signing, and that on all occasions every sheet which he saw with any signatures was pinned to the foot of the contract. He is, however, quite indefinite as to how many sheets he thus saw, and the difficult

point of classification in this case is between Exhibit 3, the second half of the original full sheet of legal cap, and Exhibit 4. We search in vain for enough certainty in Mr. Butt's testimony to convince us that he at any time attempted to testify that with any generality or persistency he saw Exhibit 4 with signatures upon it in a state of annexation to the contract. We are, however, satisfied that his testimony, if believed, would establish a very persistent if not uniform custom that Exhibits 2 and 3 were, during the period that signatures were made on them, kept so annexed. That fact is further confirmed by the testimony of one Benson, who was himself a member, having, as he claimed, insisted that there must be at least 100 names secured. He testifies that he was present at the original organization, and made close and frequent inspection of the process of obtaining signatures in the store until something more than 100 names was reached; he says up to almost 150 at the last time that he made such inspection, after which he did not carefully examine. Now, Exhibits 2 and 3 contain about 125 names. Benson is uncertain as to the number of papers which were attached together, and we feel unable to say that his testimony extends beyond those first two sheets. This generality of custom to keep up annexation is confirmed to some extent by the testimony of one or two other witnesses, but does not extend beyond Exhibits 2 and 3. We have reached the conclusion that the frequency of inspection by Mr. Butt and Mr. Benson, and their evident attention to the subject, with the fact that Exhibits 2 and 3 were both originally attached as one whole sheet, is such that the jury were warranted in the inference that at all times while signatures were being placed upon those two exhibits they were kept attached to the partnership articles. If attached at the time any individual placed his signature thereon, we think, also, the jury would be justified in believing that he signed with reference to such contract, notwithstanding his own testimony to the contrary.

Another classification is of those names, about eighty, which were written upon the pages of the book itself. Mr. Butt testifies positively that, at the time he pasted into this book the printed articles of copartnership and the three sheets of signatures, there was nothing else written in the book. An examination of the method of attachment of the contract to the book, and Mr. Butt's testimony to the effect that it is the same as when he left it, would, we are satisfied, justify a conclusion by the jury that it remained as he placed it and had never been removed; hence that, at all times when any signatures were written upon the pages of the book, the contract was annexed thereto and a part thereof; which fact of itself, though by no means conclusive, would constitute some evidence from which the jury might have concluded that a signer observed such annexation and intended to subscribe to the contract.

This disposes of all except the third sheet—Exhibit 4. As to that we can find no evidence fairly applicable, except that of several men who signed their names upon it, to the effect that when they did so it was attached, although the several appellants and some other witnesses testify that when they signed it was attached to nothing, and was merely a loose sheet lying by itself, disconnected from other papers. The entire possibility, therefore, that all such testimony may be true is apparent. It may have been annexed when one person signed, and disconnected when another. This possibility is rendered almost probability by the appearance of the paper itself, showing numerous pin-holes through the paper, indicating that it had been attached and reattached to something many times. We are unable to discover any evidence of sufficient certainty to carry to the jury the question whether that sheet was attached to the contract at the time any of appellants' signatures were placed thereon, as against their positive testimony that when each signed it the contrary was the case. Hence as to such of the appellants whose liability must

rest alone upon the presence of their signatures upon this
sheet, we cannot resist the conclusion that the court should
have directed a verdict against the plaintiff.

As to some of them individually, however, there is fur-
ther evidence, which, while not conclusive, would, we think,
suffice to warrant the jury in believing that they did sign in-
tending thereby to join this partnership. One class of such
testimony, applicable to all but two of them, is that they at-
tended one or more meetings of the members of the partner-
ship. Testimony was given in several instances to explain
away the effect of this attendance, tending to show it to have
been casual and not with a purpose of participating nor in
recognition of the fact of the party's membership; but the
fact of attendance upon a meeting of the members of a part-
nership is significant, and it was permissible for the jury to
weigh that fact against the explanations offered, and to de-
cide whether it was entirely insignificant or evinced a con-
sciousness of membership, which, of course, might be re-
ferred back to the fact of signature and lead to an inference
of purpose to become a member at the time of signing. This
was supplemented in the case of one appellant, *Silas Foster,*
by testimony that he at one time admitted that he had signed
the partnership papers.

There is one of the appellants who is not within any of the
classes above mentioned, namely, *J. W. McLees,* who neither
signed upon any of the three exhibits nor upon any page of
the book. His name appears in connection with two others
upon a slip, evidently taken from a sheet of either foolscap
or legal cap, merely wide enough to contain the three names,
and which is pasted into the book. This slip was not attached
to the contract when brought to Mr. Butt to be put into the
book, but has, of course, been pasted in since by some person
unknown. *McLees's* defense is that he never signed it;
never knew or had anything to do with the Farmers' Union.
This is met by the testimony of one Harris, whose name is

also on the slip, next to that of *McLees*, who testifies with much hesitation and uncertainty that to the best of his recollection he and *McLees* signed at the same time upon a piece of paper—whether attached or not he forgets, but for the declared purpose of becoming parties to the partnership agreement. We must hold that this was sufficient, with some evidence of authenticity of the signature as *McLees's*, to take to the jury the question whether he signed for the purpose of joining the partnership.

This analysis of the evidence, which is, of course, but declaratory of our conclusions after weighing very many items of evidence not here commented on, leaves but two of the appellants, namely, *O. L. Stromsland* and *Arndt Johnson*, undisposed of. Their names both appear upon Exhibit 4. Both admit their signatures, but both declare that the paper was in no wise attached or connected with any other paper or agreement when they signed; that no suggestion was made to either of them of the joining of any partnership. *Stromsland* testifies that he wanted to purchase some wire on credit, and that the manager, after learning that this appellant had previously paid his dollar for the privilege of trading, asked him to write his name on this sheet, *Stromsland* understanding that it was only for the purpose of furnishing correctly his name for the purpose of charging the amount of the purchase. *Johnson* testifies, as do most of the other appellants, that he was requested to sign merely in order that the manager might have a list of those who had secured the privilege of trading by paying the dollar fee. Since, as we have concluded, there is no evidence which could have justified the jury in finding that Exhibit 4 was at all times physically annexed to the partnership contract, and since we find no particle of other evidence to contradict the testimony of these two appellants, we must hold that as to them the trial court erred in not directing a verdict in their favor.

2. Error is also assigned because, after the entry of judg-

ment upon this trial, on appeal from the clerk's taxation of costs, the court allowed and incorporated in the judgment the costs taxed and allowed in the former judgment. Indeed, the court seems to have considered the former judgment entirely reversed by the decision of this court, and to have entered a new judgment, not only against the appellants on that appeal, but against all of the defendants, including those who had rested content with the former judgment against them. The only subject, however, in which these appellants are concerned, is the allowance against them of the costs up to the time of the rendition of the first judgment, and upon this we can find nothing of error. The members of this partnership are, of course, liable each for all of the plaintiff's debt, if it be a valid debt of the partnership. He is entitled, upon recovering judgment against any, to recover also the statutory items of costs from the commencement of the suit to the entry of the judgment. It is not suggested that any erroneous items are included, hence we cannot discover that in this respect the plaintiff's recovery is different from that to which he is entitled. Whether those who did not appeal from the former judgment, but rested content therewith, might have ground of complaint by reason of the entry of a new judgment against them containing costs thereafter accrued, is somewhat debated by appellants' counsel, but is not a subject in which his clients have any interest, none of them being in that class.

The printed case contains 172 pages, but therein is printed a considerable amount of testimony relating exclusively to the liability of defendants who do not appeal; also is printed *in extenso* the judge's charge, to which no exceptions were reserved. This is in disobedience to Rule VIII, which requires that the case shall contain an abstract or abridgment of only so much of the record as may be *necessary* to a full understanding of the questions presented for decision. In addition, it is of course true that a very large part of the printed

case pertains to the liability of the nonprevailing appellants, whose costs are not recoverable in their favor upon this appeal. For these reasons, we shall limit taxation of expense of printing case to about one third thereof.

*By the Court.*—Upon the appeal of *O. L. Stromsland* and *Arndt Johnson*, the judgment is reversed and cause remanded for a new trial. As to all other appellants it is affirmed. In taxing costs in favor of the prevailing appellants, only fifty pages of the printed case will be allowed.