MENDONCA v. RUSSELL *et al.*

No. 5038.   Opinion Filed July 27, 1915.

(150 Pac. 1061.)

1. **PARTNERSHIP—Relation—Question for Jury.** When the question of the existence of a partnership arises between the alleged partners themselves, evidence which tends to show a common interest between them to reciprocally participate in losses as well as the profits of the business **held** to raise the question of an implied contract of partnership sufficiently to entitle the plaintiff to go to the jury.

2. **TENANCY IN COMMON—Rights of Covenants—Profits and Proceeds.** Where parties contribute to a joint fund for the purchase of personal property, and the property is purchased, even in the absence of the organization of a copartnership, they would still all be joint owners, and, as joint owners, each would be entitled to recover his share of the profits and his share of the property or its proceeds.

(Syllabus by Brett, C.)

*Error from District Court, Lincoln County;*
*Chas. B. Wilson, Jr., Judge.*

Action by J. A. Mendonca against W. L. Russell and others.  Judgment for defendants, and plaintiff brings error.  Reversed.

*Geo. B. Rittenhouse* and *F. A. Rittenhouse,* for plaintiff in error.

*Hoffman & Foster,* for defendants in error.

Opinion by BRETT, C. This action was brought in the district court of Lincoln county by the plaintiff in error, plaintiff below, against the defendants in error, defendants below, for an accounting. The petition alleges, in substance, that the plaintiff and defendants owned as partners a certain stallion described in the petition; that the plaintiff and defendants each contributed $200 to the capital stock of the copartnership; that for some time the stallion was owned and stood by the copartnership, and that without the knowledge or consent of the plaintiff, and without accounting to him, the partnership was dissolved, and the horse sold to a member of the partnership, and all funds appropriated by the other members of the partnership; that defendants had received large profits from the business; that plaintiff had paid certain assessments levied and collected for keeping the stallion —and prays for an accounting, and for judgment in the sum of $500. Defendants filed a verified general denial.

The cause came on regularly for hearing before the court and a jury. At the close of plaintiff's evidence a demurrer was interposed to the evidence, which was sustained by the court, and judgment rendered for the defendants, from which judgment the plaintiff appeals to this court. The principal question raised by the appeal is whether or not it was error to sustain the demurrer to the evidence.

The material facts brought out by the evidence are that there was a company known as the McLoud Horse Company; that this company purchased the horse described in the petition, paying $2,800 for him; that the plaintiff owned two one-half shares of stock of the value of $100 each; that one of these one-half shares was issued

to him at the time the stallion was purchased, and he subsequently purchased the other one-half share from another member of the company to whom it had been issued; that for a time he received notice of the meetings of the stockholders, and the company levied certain assessments against him for the care and keeping of the horse, which he paid; that it was understood that each stockholder was to share the profits in proportion to his investment.

The evidence also showed that the horse had been sold to one of the stockholders for $1,000; that the horse had made several seasons, and plaintiff had never received any dividend on his investment, nor any part of the amount for which the horse was sold; and that the defendants refused to make an accounting to him, or to allow him to inspect the books.

It seems that the demurrer was sustained upon the ground that the evidence was insufficient to establish a partnership relation between the plaintiff and defendants. It is true that partnership is a contract relation, but contracts may be either express or implied; and our statute on contracts (section 938, Rev. Laws 1910) says:

"An implied contract is one, the existence and terms of which are manifested by conduct."

And while the evidence of plaintiff did not show that he was by any specific words or express contract a member of the firm, yet we think the conduct of the defendants at least showed an implied contract to that effect.

In *Plunkett v. Dillon,* 4 Houst. (Del.) at page 396, which very ably discusses this question, the court says:

"A partnership can be formed only, however, by voluntary agreement, either express or implied, by two or more competent persons joining together their property, labor, skill, and experience or one or more of them, in the transaction of business for their joint benefit and profit; and it may be for a specific purpose, or be confined even to a particular transaction. When the question of its existence arises * * * between the alleged partners themselves, there must be a common interest in the stock of it, and an agreement between them, either express or implied, reciprocally to participate in the losses as well as the profits of the business."

And again at page 397 of 4 Houst. (Del.):

"It is not essential to the existence and validity of a partnership that all the parties interested or concerned in it should take an active part in the transaction of the business."

The fact that the plaintiff contributed to the purchase price of the horse, and the defendants accepted it, that the defendants notified plaintiff of the meetings of the stockholders of the company, and levied assessments against him, which he paid, and they accepted, is very strong evidence of an implied contract of partnership. It is not reasonable to believe they would have accepted his money on the purchase price of the horse, issued notices to him of the meetings of the stockholders, levied assessments against him, and accepted the same, for the keeping of the horse, unless they understood he was a partner. And if he was a partner, he could not be denied a share in the profits of the business, or a share in the value of the horse, because there was no express contract of partnership.

The legal elements of a partnership constitute a question of law for the court, but whether a partnership exists between the parties is a question of fact for the jury. And

in *Cobb v. Martin*, 32 Okla. 588, 123 Pac. 422, the court says that:

A court is not authorized, "where there is testimony offered that fairly tends to establish the relationship alleged, to take the case from the jury and direct a verdict. Testimony, having been admitted for the purpose of showing that Edward Martin and S. S. Cobb were partners, being before the jury unchallenged, it was error necessitating a reversal for the trial court to direct a verdict. When the question whether a partnership exists is a matter of doubt, to be decided by inference to be drawn from all the testimony, it is one of fact for the jury; and the court should not nonsuit or direct the jury to find a verdict for the plaintiff or defendant. *Seabury et al. v. Crowell*, 52 N. J. Law, 413, 21 Atl. 952, 11 L. R. A. 136; *Id.*, 51 N. J. Law, 103, 16 Atl. 54, 11 L. R. A. 136; *Chick v. Robinson, supra* [95 Fed. 619, 37 C. C. A. 205, 52 L. R. A. 833]; *Simmons v. Ingram*, 78 Mo. App. 603; *Moore v. Dickson*, 121 Wis. 591, 99 N. W. 322; *Strickler v. Gitchel*, 14 Okla. 523, 78 Pac. 94; *Cassidy et al. v. Saline County Bank*, 14 Okla. 532, 78 Pac. 324."

The demurrer admitted all the facts testified to, and admitted plaintiff had $200 stock in the company; that he had been notified by the company of the time and place of its meetings; that the company had levied assessments against him for the care and keeping of the horse; that he had paid these assessments, and they had accepted the same.

We think that was sufficient to raise the question of an implied contract of partnership, and to entitle the plaintiff to go to the jury. For, even if it were contended that the evidence did not show the organization of a company, and if in fact there was not, in a strictly legal sense, a copartnership between any of the parties to the action, they would still all be joint owners, and the plain-

tiff would, as a joint owner, even in the absence of a partnership, be entitled to recover his share of the profits and his share of the property, or its proceeds. The defendants would not be permitted to accept his contribution to the joint fund, and then walk off with it, and say, You have no interest in the property purchased by this fund, because we failed to organize ourselves into a technically legal copartnership.

We recommend that the judgment be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.